[No. 31814. Department One. January 10, 1952.]

KEITH CAPPER, *Respondent*, v. HARLAN S. CALLAHAN, as *Sheriff of King County, Appellant.*[1]

[1] Reported in 239 P. (2d) 541.

*Medley & Haugland* and *Richard K. Pelz,* for appellant.

*Philip W. Schoel* and *Ferd J. Schaaf,* for respondent.

GRADY, J.—This action was instituted by the respondent against the appellant, sheriff of King county, to recover damages claimed to have been sustained as a result of his failure to properly care for and protect a vessel upon which he had levied a writ of attachment. The court found appellant had been negligent, and awarded respondent a judgment.

On or about February 19, 1948, respondent was the owner of a vessel which was moored at the dock of the Lake Union Dry Dock Co. An action was commenced against respondent, and a writ of attachment was issued. The respondent was not in the state of Washington at the time of the commencement of the action, and the evident purpose of the attachment was to acquire jurisdiction of the person and to secure a lien whereby any judgment that might be rendered could be satisfied by a sale of the vessel. When the attachment was levied, an employee of the moorage company gave the deputy sheriff a keeper's receipt. The dry dock company, through its attorneys, informed appellant by letter that the giving of the receipt for the vessel was done with the understanding that the company would continue to moor the vessel for the account of the sheriff and without other or further liability than would attach to the company if the vessel had been left for moorage by its owner; also that the company did not assume any responsibility for care or maintenance of the vessel or engines or equipment, and did not undertake to protect it against any loss or damage whatsoever.

During the month of January, 1949, the Lake Union area experienced freezing temperatures. On January 19th it was noticed that the vessel had taken on water and was

listing. Employees of the dry dock company pumped out the water. They discovered that at least one of the water lines had frozen and was broken. The valve or valves ahead of the breaks were shut off. About ten days later, the vessel again took water, and it was pumped out. On this occasion, it was found that a sea valve had frozen, and this was blanked off.

The dry dock company wrote a letter to appellant calling his attention to the fact that on January 19th it had reported that the attached vessel was taking water and it had requested permission of him to supply labor and pumps to pump out such water; that at such time it was found some of the pipe lines to the sea connections had frozen and had cracked, causing leaks, and that the sea connections involved had been shut off. The appellant was informed that on January 29th the vessel again started taking water, necessitating the use of pumps, and on that occasion it was found that additional lines had frozen and that the sea connections had been secured; that as of the date of the letter it was stated that the sea connection to the starboard auxiliary engine would not close and it had become necessary to blank off this valve to stop a leak. The attention of the appellant was called to the letter of February 21, 1948, disclaiming responsibility for the care and maintenance of the vessel.

On March 28, 1949, the attachment was released and respondent resumed possession. From the time of the levy of the attachment until a few days before it was released, neither appellant nor any of his deputies visited the vessel.

The court found that, prior to the January, 1949, freezing, the motors of the vessel were in working condition and the water cooling system was in operation; that the appellant did not drain the water pipes so as to prevent freezing; that as a result they froze and broke, which allowed water to get into the vessel, causing damage to the machinery and equipment. The court was of the opinion that such omission on the part of appellant constituted negligence.

The appellant contends that he complied with his full duty as an attaching officer when he appointed a caretaker and left the vessel moored at the same place respondent had moored it; that a sheriff is not an insurer of attached property, and the care required of him is that which is given by the ordinary prudent owner; that the vessel was under constant supervision by the dry dock company, and, when custody is taken of such property as a vessel under an attachment, liability of the officer is limited to his selection of a place where it may be kept.

When a writ of attachment is issued and delivered to a sheriff for execution, it becomes his duty to take into custody personal property capable of manual delivery. Rem. Rev. Stat., § 659 [P.P.C. § 11-25]. In the case of such property as a vessel, custody may be taken by mooring the vessel to a dock. The officer then has the duty to exercise in the care and preservation of the attached property the amount of diligence which an ordinarily prudent person would exercise towards property of a like nature if vested with the complete ownership thereof. The care to be exercised must be commensurate with the dangers involved, having regard for the nature and situation of the property, and the officer is responsible for reasonably foreseeable happenings or contingencies which, by the exercise of reasonable care, he could have prevented. He is not an insurer of the property or liable for its loss or damage by act of God, the public enemy, or inevitable accident. *State of Delaware v. Clark,* 41 Del. (2 Terry) 246, 20 A. (2d) 127, 138 A. L. R. 704. Appended to this case is an annotation. The annotator cites *Epley v. Hunter,* 154 Wash. 163, 281 Pac. 327. In that case, we had under consideration the duty of a sheriff with reference to attached personal property, and recognized the rule of liability when such duty is not performed and damage thereto results. In *Marshall v. Chapman's Estate,* 31 Wn. (2d) 137, 195 P. (2d) 656, we decided that if the sheriff was negligent in caring for a dairy herd upon which he had levied an attachment, he must respond in damages. We cited with approval the Delaware case, *supra.*

When the appellant attached the vessel belonging to respondent, it was not sufficient in the exercise of due and reasonable care that he merely leave it at its place of moorage and depend upon the dry dock company to protect the pipes and machinery against damage resulting from such pipes becoming frozen and breaking. Weather conditions in the month of January were such that appellant should reasonably have foreseen that pipes containing water might freeze and burst and should have guarded against such a contingency by draining the pipes.

The appellant further contends that, even though it be concluded that he was negligent, and as a result thereof pipes froze and burst causing water to enter the vessel, the respondent has not proven any damages in accordance with any rule adopting a measure thereof.

In support of his contention, the appellant argues (1) that the negligence attributed to him constituted a maritime tort, and the measure of damages would be the cost of repairs to the damaged machinery and equipment; (2) that if common-law principles are applied, the measure of damages would be the same; and (3) if damages are based upon market values, the measure should have been the difference in the market value of the vessel at the time of its redelivery in a condition uninjured by negligence, less the actual market value at that time in the condition in which it was delivered.

The difficulty we encounter in considering the foregoing questions is that the case was tried upon the theory that the measure of damages would be the difference between the market value of the vessel immediately before and after the freezing and incidental damage took place, and that the questions now presented were not raised in the superior court. The evidence submitted by respondent was upon the theory of difference in market values. No objection was made that such was not the proper measure. The motion for dismissal at the close of respondent's case was based upon the ground that the evidence did not show negligence on the part of appellant and that there was no proof

that the machinery or equipment of the vessel sustained any injury or damage. When appellant reached the subject of damages in his defense, witnesses were called and interrogated with reference to the same measure of damages as presented by respondent. No testimony was offered on the theories of damages now urged by appellant.

This court has always followed the rules that a case will not be reviewed on a theory different from that on which it was tried in the trial court, and questions not raised in that court will not be considered on appeal. The reason for the rule is that if a party desires to rely upon some theory other than that upon which the case was tried, he must present it to the trial court so that a ruling thereon may be made and, if such ruling be adverse, he may have an opportunity to elect to stand on his theory or apply to the court to amend his pleadings, if necessary, and present some other one. This also applies to all questions a party may desire to have reviewed upon an appeal from final orders or judgments adverse to him. *O'Brien v. Griffiths & Sprague Stevedoring Co.*, 116 Wash. 302, 199 Pac. 291; *Nooksack Valley State Bank v. The State Supervisor of Banking*, 175 Wash. 78, 26 P. (2d) 631; *In re Corneliusen's Estate*, 182 Wash. 488, 47 P. (2d) 843; *Lawson v. Helmich*, 20 Wn. (2d) 167, 146 P. (2d) 537, 151 A. L. R. 930; *Merlin v. Rodine*, 32 Wn. (2d) 757, 203 P. (2d) 683. These cases are taken from a large number which have been decided with reference to what will be the scope of review by this court. Many of our other cases are cited in the opinions or may be found in Volume 2 of the Washington Digest and Supplement, Appeal and Error, Key Nos. 169, 170, and 171.

What we have just said does not apply to such questions as the jurisdiction of the court (Rem. Rev. Stat., § 263 [P.P.C. § 85-17]; *West v. Martin*, 47 Wash. 417, 92 Pac. 334), whether the complaint states a cause of action (*State ex rel. Everett Trust & Savings Bank v. Pacific Waxed Paper Company*, 22 Wn. (2d) 844, 157 P. (2d) 707, 159 A. L. R. 297), or one that affects the right to maintain

the action (*Holzer v. Rhodes*, 24 Wn. (2d) 184, 163 P. (2d) 811, 172 A. L. R. 1173).

The record shows that the vessel was acquired by respondent in 1947 for $14,750. It was originally used as a minesweeper by the navy. The minesweeping equipment was removed, and the mechanical and electrical equipment of the vessel was overhauled. The vessel was put in a good operating condition and had been taken on several cruises in Lakes Union and Washington. Respondent did not have the vessel repaired, but sold it in the condition it was in after the attachment was released. The sale was made by a broker upon the open market, and after much effort he was not able to secure more than $7,500 therefor. Witnesses whom the court considered qualified testified that the market value of the vessel prior to the freezing of the water pipes was from $30,000 to $32,000. Testimony was submitted relative to probable damage to some of the machinery and equipment, and it took quite a wide range. The witnesses were examined and cross-examined in much detail to determine the extent of their testimonial knowledge. We gather from the remarks made by the trial judge when deciding the case that he considered certain items of claimed damage had not been established, but, by reason of the freezing and breakage of pipes, substantial damage had been done to operating parts of the vessel, which diminished its market value.

The court did not accept the valuation of $30,000 to $32,000 placed upon the vessel by the witnesses who so testified. Instead, the court took into consideration the purchase price paid by respondent for the vessel and what was done to put it in proper condition to use, and concluded that the fair market value of the vessel before the freezing was $15,000. Rather than be guided wholly by opinion evidence, the court considered the condition the vessel was in after the results of the freezing became apparent, the efforts made to sell it on the open market, and the price that was obtained after diligent efforts to sell were made, and reached the conclusion that the selling price of $7,500

represented the fair market value of the vessel immediately after the damage had been done. Applying the difference in value rule, the court awarded judgment in the sum of $7,500. We find in the record substantial evidence justifying the court in making the findings it did of respective values, and are of the opinion that it applied the correct rule of measurement of damages.

The judgment is affirmed.

SCHWELLENBACH, C. J., MALLERY, DONWORTH, and WEAVER, JJ., concur.

