[No. 32571.   Department Two.    December 18, 1953.]

JACOB S. SIMS, *Appellant,* v. ERNEST HORTON *et al.,*
*Respondents.*[1]

*Sweet, Wolf & Merrick* and *Martin L. Wolf,* for appellant.

*Maurice Kadish* and *S. K. Nielsen,* for respondents.

[1]Reported in 264 P. (2d) 879.

HAMLEY, J.—Jacob S. Sims brought this action to recover damages for the alleged conversion of his automobile.

Two acts of conversion are alleged in the complaint, each involving a different defendant. It is alleged that defendant Ernest Horton committed an act of conversion on or about August 21, 1952, in having the automobile forcibly taken from the possession of plaintiff and having it stored at the garage of defendant Cordes Towing Service, Inc. It is alleged that defendant Cordes Towing Service, Inc., committed an act of conversion on or about August 30, 1952, in unlawfully and without justifiable excuse denying plaintiff's demand for redelivery of the car, and in refusing to deliver the automobile to plaintiff.

Defendants' answer consists of a general denial and an affirmative defense. By way of affirmative defense, it is alleged that, on or about August 21, 1952, plaintiff was delinquent in the making of three monthly payments in the sum of $64.38 each, on a loan secured by a chattel mortgage on the automobile, held by Associated Business Club, Inc., of California; that, under the terms of the chattel mortgage, plaintiff had agreed that in case of delinquency the automobile could be repossessed; that the chattel mortgage further provided that the automobile was not to be removed from the state of California; and that the automobile was lawfully taken with the permission of plaintiff, the latter having voluntarily surrendered it, together with its keys, to defendant Horton. Plaintiff denied the affirmative allegations of the answer.

The case was tried to the court without a jury. Judgment for defendants was thereafter entered, and plaintiff appeals.

Appellant argues that the trial court erred in admitting as an exhibit a document with the heading "Associated Business Club, Inc.," and entitled "Statement of Loan." This is a printed form with some spaces filled in with typewriting, and appellant's signature at the bottom, above the printed word "Borrower." The document refers to a loan in the sum of $1,381, which Associated Business Club, Inc., had made to appellant, to a promissory note evidencing the

loan, and to a chattel mortgage which had been given to secure the loan. The reverse side of this document purports to set out several provisions of the chattel mortgage. The document recites, among other things, that borrower acknowledges receipt of a copy of the statement and understands that in addition "he has signed a promissory note and chattel mortgage."

This document was in appellant's possession at the time of trial. He identified the document and stated that it was a statement of loan which he obtained from Associated Business Club, Inc., at San Francisco, California. The promissory note and chattel mortgage referred to in this paper were not introduced in evidence.

Appellant objected to the introduction of this document on the ground that it did not purport to be a chattel mortgage and therefore was inadmissible to prove the existence of such a mortgage or any of the terms of such an instrument.

The case was decided without reference to the specific terms of the chattel mortgage. Whether or not the document was admissible to prove such provisions, therefore, need not be decided.

We believe that the document was admissible for the purpose of proving that Associated Business Club, Inc., held a chattel mortgage on the automobile. In any event, however, the document was only cumulative evidence as to this latter question. Appellant himself testified that he had borrowed approximately $1,400 "on the car," and that there was a mortgage upon it. He also introduced in evidence a registration card issued in 1952 by the state of California, which showed that he was the registered owner and Associated Business Club, Inc., was the legal owner.

Appellant questions the trial court's findings of fact to the effect that appellant consented and agreed that respondent Horton, as agent for Associated Business Club, Inc., might repossess the automobile, and that appellant voluntarily delivered the keys to Horton.

Horton operates a finance adjustment business under the name West Coast Recovery Service. On August 19 or 20,

1952, he received a written request to repossess the automobile because of three months' delinquency in the payments on the loan. After receiving such request, Horton saw the automobile parked on the street in front of appellant's home. He immediately called Cordes Towing Service, Inc., and requested that a tow truck be sent. This was done; and Horton met the truck and got into it a short distance from appellant's home.

Horton testified that, as the tow truck stopped by appellant's automobile, appellant came out of his house and wanted to know what was going on. Horton gave appellant his business card, identified himself as a representative of the legal owner, and showed appellant the written request to take possession of the vehicle. Continuing his account of what transpired, Horton testified:

"A. (continuing) He stated that he was aware that he was three payments delinquent. I asked him if he had the keys for the vehicle, and he said no, they were in the house. I asked him if he would get it, and he said he would. He went in the house and brought the key out, one key, and handed it to me. I turned and handed it to Mr. Cordes, and told Mr. Cordes to go ahead and pick up the car and take it down to his place for storage. Mr. Sims agreed then to refinance the vehicle, because I told him that was what we were interested in, was our money; we didn't want the automobile, we wanted our money . . .

"A. Yes, your honor. That was the agreement. That was the understanding, that he would get it refinanced, at the time that we left. I then got in the truck with Mr. Cordes after we hitched it up, and I rode down to the corner where my car was, and went on about my business."

Appellant gave a very different version of what occurred. He testified:

"A. I came out. The tow truck had the car raised up, and they tied it on to pull it off. I asked the gentleman what was the reason for taking away the car, and he said he had permission to take it away. And I asked him to see his papers, and he said he didn't need to but he showed me a deputy sheriff badge. And I told him he still needed a paper telling me why he was taking it away. Q. What did he say? A. He told me it was for the nonpayment. I

offered to show him a receipt of the payments paid, but he refused to see them. Q. Then what happened? A: Well, after he showed me his badge he asked me to give him the key since he was an officer, a deputy sheriff. So I gave him the key to the automobile. He told me to get in touch with my finance company."

Appellant also testified as follows: Between July 15 and 20, 1952, he had sent two money orders, in the total sum of one hundred twenty-eight dollars, to Associated Business Club, Inc., to cover the June and July payments. On about August 1, 1952, having failed to receive a receipt for these payments, he sent a telegram of inquiry to this concern, but received no reply. At the time of the repossession, appellant offered to show Horton the two money order receipts, but Horton refused to see them. The money orders were returned to appellant a few days after the repossession. He cashed them and used the money for personal expenses.

Appellant did not produce in court the money order receipts or a copy of the telegram. He testified that the first time he saw Horton after the repossession, he asked Horton to give him time to see if he could refinance his contract in Seattle.

■■ The findings of fact indicate that the trial court accepted Horton's version of what occurred at the time of the repossession. We are unable to say that the evidence clearly preponderates against these findings. The findings of fact which were entered support the judgment, in so far as respondent Horton is concerned. A chattel mortgagee may, with the consent of the mortgagor, take possession of the mortgaged property without following one of the statutory methods of foreclosure. *Carey v. Interstate Bond & Mortgage Co.*, 4 Wn. (2d) 632, 104 P. (2d) 579.

Other assignments of error raise the question of whether respondent Cordes Towing Service, Inc., was entitled to judgment in its favor. There is no specific finding of fact relative to the allegations of the complaint to the effect that Cordes Towing Service, Inc., had, unlawfully and without justifiable excuse, denied appellant's demand for redelivery

of the car and had refused to deliver the automobile to appellant.

Horton, having secured possession of the car with the consent of appellant, was entitled to retain possession until the mortgage debt was paid. *Marsh v. Wade*, 1 Wash. 538, 20 Pac. 578; *Brockway v. Abbott*, 37 Wash. 263, 79 Pac. 924. For the purpose of retaining such possession, Horton placed the car in the hands of Cordes Towing Service, Inc., as bailee. Under these circumstances, Cordes Towing Service, Inc., had no authority or right to release the automobile to appellant. The company's refusal to do so was therefore not an act of conversion.

Much of appellant's argument under these and other assignments of error deals with the question of whether respondents are chargeable with conversion because the automobile was assertedly sold without appellant's consent and without following statutory procedure.

This question, however, was not before the court. The car was repossessed on August 20, 1952 (the complaint alleges August 21st). On August 30, 1952, Cordes Towing Service, Inc., refused to return it to appellant. The complaint was verified on September 3, 1952, and filed on September 26, 1952. It makes no reference to a sale of the car. No amendment of the complaint was offered or received. The evidence indicates that the car was actually sold on December 20, 1952. This was nearly three months after the suit had been instituted. It follows that any question as to whether the sale of the automobile constitutes a conversion was not litigated in the trial court, and may not be reviewed here.

The judgment is affirmed.

GRADY, C. J., SCHWELLENBACH, DONWORTH, and FINLEY, JJ., concur.

---

January 29, 1954. Petition for rehearing denied.