[No. 35388.   Department One.   December 1, 1960.]

W. F. ZASTROW *et al., Respondents,* v. W. G. PLATTS, INC., *Appellant.*[1]

*Rudolph Naccarato,* for appellant.

*Cunningham & Cunningham,* for respondents.

DONWORTH, J.—This action was instituted by W. F. Zastrow and his wife (hereinafter called respondents) against W. G. Platts, Inc. (hereinafter called appellant), a corporation controlled by W. G. Platts, its president, for specific performance of a real-estate contract. The prayer for relief in the original complaint reads as follows:

[1]Reported in 357 P. (2d) 162.

"WHEREFORE plaintiffs pray judgment against the defendants as follows:

"That the defendant W. G. Platts, Inc., a corporation, be required to deliver over to plaintiffs, or their attorneys, all documents including warranty deed, bill of sale, assignment of lease and conditional sales contract belonging to plaintiffs and mentioned and described in paragraph XII of this complaint, and in the event of the failure and refusal of the defendant, W. G. Platts, Inc., to deliver over the same that this court appoint a commissioner to make, execute and deliver such documents to plaintiffs.

"That plaintiffs have judgment against W. G. Platts, Inc., . . . in the sum of $10,000.00 for the costs and disbursements of this action, and for such other and further relief as to the court seems meet and proper in the premises."

To this complaint, appellant answered and cross-complained asking for rescission of the sales agreement, principally on the ground of misrepresentation.

The uncontroverted facts relating to the negotiation and consummation of the contracts can be summarized as follows:

September 24, 1957, the parties entered into a written contract for the sale and exchange of specified property, including both realty and personalty. When a subsequent title examination revealed certain liens on the property to be conveyed by respondents to appellant, a supplemental agreement was signed by the parties on October 4, 1957, which provided for the manner of discharge of the liens. On the same date, respondents also executed a warranty deed for the real property they were to convey. The deed, together with the other required documents, was promptly delivered to appellant. In short, respondents fully completed performance of their half of the bargain.

Some days thereafter, on October 15, 1957, the instruments of conveyance from appellant to respondents, including a warranty deed, a bill of sale, an assignment of leases, and a personal property contract, were delivered to respondents. Respondents immediately deposited with a title company, for recording, the exchange contract describing the real estate and personal property together with the warranty deed to their new property (both executed

by them). Events then took a very strange turn. On November 15, 1957, *appellant's president* apparently went to the title company and, without authority, simply took back the instruments which *respondents* had previously left to be recorded. The net result of this entire sequence was that appellant became the owner of record of *all* the property involved in the exchange transaction, leaving respondents with no vestige of title or right of possession in any of the property, real or personal.

The case went to trial on April 8, 1959. After hearing all the evidence offered by both parties, the trial court made full and complete findings of fact [2]and awarded respondents damages in the sum of $38,043.22, calculated in the following manner:

| | | |
|---|---|---|
| "Purchase price plaintiffs' real property | | $41,700.00 |
| Purchase price personal property | | 3,300.00 |
| Purchase price feed and use of feed lot | | 2,500.00 |
| Total purchase price | | $47,500.00 |
| "Real estate mortgage assumed | $8,155.96 | |
| Lien claim paid by defendant | 1,100.00 | |
| Abatement re feed | 66.00 | |
| Abatement re roofing | 3,276.00 | |
| | | $12,597.96 |
| | | $34,902.04 |
| "18 months interest at 6% | | 3,141.18 |
| | | $38,043.22" |

The damage award was in lieu of a decree of specific performance by reason of the fact that between the time

---

[2]At page 15 of appellant's brief, counsel states, "The testimony and evidence submitted at the time of trial of this cause (Transcript and Exhibits) clearly shows that the only question involved is that of whether there should be specific performance or whether there should be a recision [*sic*], and whether or not the parties should be placed in status quo and a finding made as to what should be required to so place said parties." In view of this statement, appellant has waived his challenge to the accuracy of the several findings of fact set forth in his assignments of error.

of the execution of the original exchange agreement and the day of the trial, appellant had so encumbered and otherwise dealt with the property involved as to make specific performance unfeasible.[3]

The assignments of error urged by appellant present three questions for determination on this appeal: (1) Did the trial court have authority to award damages in lieu of specific performance? (2) Was appellant entitled to rescind the contract because of material misrepresentations by respondents concerning the physical condition of the real and personal property involved? (3) Assuming that the trial court did have such authority, was the measure of damages proper?

■ As to the authority of an equity court to award damages, this question is well settled. The rule is this— once a court of equity has properly acquired jurisdiction over a controversy, such a court can and will grant whatever relief the facts warrant, including the granting of legal remedies. See 49 Am. Jur. 192; 81 C. J. S. 778; also, *Twohy v. Slate Creek Mining Co.*, 31 Wn. (2d) 668, 198 P. (2d) 832 (1948) and *Hubbell v. Ward*, 40 Wn. (2d) 779, 246 P. (2d) 468 (1952). The obvious purpose of this rule is to avoid a needless multiplicity of litigation, *Biggs v. Gilbert-Tilbury Co.*, 106 Wash. 271, 179 Pac. 839 (1919). In the case at bar, respondents' prayer for relief, quoted above, not only requested specific performance, but also "such other and further relief as to the court seems meet and proper." It should be noted also that it was because of appellant's own acts in relation to the property that the awarding of a decree of specific performance became impractical.

■ Appellant's contention that the trial court erred in failing to find that respondents made material misrepresentations with regard to the property conveyed by them is unsupported by the evidence. The parties to this action were strangers dealing at arm's length. Platts himself,

---

[3]Besides mortgaging some of the property in question, appellant entered into new leases at lower rentals on other portions of the realty and sold much of the personalty.

acting for appellant corporation, testified that he personally went upon the premises of respondents to make his own examination before the negotiations even began. Furthermore, he did so on more than one occasion. Where a purchaser or his agent makes as complete an examination of the premises as he desires, such purchaser is generally precluded from having the contract rescinded on the ground of misrepresentation. See 70 A. L. R. 942; also, *cf. Wilson v. Mills*, 91 Wash. 71, 157 Pac. 467 (1916); *Sutton v. Peterson*, 193 Wash. 175, 74 P. (2d) 884 (1938); *Ramsey v. Mading*, 36 Wn. (2d) 303, 217 P. (2d) 1041 (1950). No evidence was offered at the trial which would take this case out of the general rule.

In the light of the foregoing facts and the law applicable thereto, we are of the opinion that appellant's claim of material misrepresentation must fail. Note, also, that the trial court did allow a reduction in the damage award in the amount of $3,276 for certain defects in the roof of the sales barn (the major property conveyed by respondents) not discoverable from a reasonable inspection and, likewise, an abatement of sixty-six dollars for cattle feed which was deemed unusable.

Appellant's remaining argument relating to the measure of damages is similarly unsupported in either fact or law. Appellant urges that "The value set on the properties by the parties during their contracting period, were exchange values only," and for this reason the valuation is not a fair measure of actual worth. We find this rationale to be a patent *non sequitur*. If, in fact, the values placed upon the properties for exchange purposes were untrue, it would certainly be incumbent upon appellant to prove them to be untrue. No such proof was offered. The damage award made by the trial court was the value of respondents' equity in the property they conveyed plus interest from the date of the breach (less the two items noted above). We note further that the trial court's valuation was based not only upon so-called exchange values, but also upon testimony as to market value offered by respondent W. F.

352

Zastrow — testimony uncontradicted by appellant. *Cf. Morgan v. Bell,* 3 Wash. 554, 28 Pac. 925 (1892).

The judgment of the trial court is hereby affirmed.

WEAVER, C. J., MALLERY, FINLEY, and OTT, JJ., concur.

---

March 21, 1961. Petition for rehearing denied.