[No. 39187.    Department One.    June 20, 1968.]

MURLEN JENSON et al., Appellants, v. NELDON L. RICHENS et al., Respondents.*

*Reported in 442 P.2d 636.

*Charles T. Schillberg,* for appellants.

*Ries & Kenison,* by *Darrell E. Ries,* for respondents.

HALE, J.—One of the long-cherished rights afforded by a free society is that of freedom to contract. Within the rules which separate the lawful from the unlawful, a competent person may contract with any person on whatever terms he chooses. He may sign whatever instrument he likes and bind himself to whatever lawful undertaking he desires. He may draw the instrument of agreement himself or sign one prepared by another. Implicit in this freedom to contract is the freedom from advice of counsel. The law, while it may discourage, does not prevent any legally competent person from acting as his own counsel, for one is as free to make his own mistakes as he is to contract. Here is a case where the parties would have done better to curtail in a slight degree their freedom of contract by consulting counsel before making an agreement.

In 1961, the plaintiffs, Murlen Jenson and Jimmie, his wife, bought a 561-acre farm in Grant County, Washington, from C. B. Farms, Inc., agreeing to pay $300,000 for it and making a $40,000 down payment. The Jensons effected the purchase by means of an executory contract of sale along with an escrow arrangement and agreed to pay off the balance at the rate of $27,500 annually. The property was

subject to three mortgages which the Jensons did not assume and which the sellers agreed to pay off according to the terms and conditions of the mortgage agreements. The property was and would remain subject to certain described easements for a road, drains and canals, rights for the erection and maintenance of electrical distribution lines and pipelines for water and natural gas.

In 1964, less than 4 years after the Jensons had signed the conditional sale contract as buyers, the defendants, Neldon L. Richens and Lucille, his wife, decided that they would like to buy the farm from the Jensons. Apparently Mr. Richens got in touch with a friend in the real-estate business, a Carl Burress, and had him communicate to the Jensons the Richenses' interest in purchasing the farm.

From that point on there is a dispute as to what happened, but we are quite certain that Mr. Burress prepared a printed form entitled "Agreement to Purchase," filling in the many blank spaces on it and presenting it to the Jensons and the Richenses for their signatures.

The typewritten filled-in portions designated Neldon L. and Lucille S. Richens as purchasers and recited that Burress Realty acted as agent for the seller. Total purchase price was typed in at $420,000, and the instrument stated that $10,000 earnest money had been paid in the form of a note signed by Mr. and Mrs. Richens and delivered to Mr. Burress. The remainder of the $410,000 was to be paid off in accordance with the following typed-in provision:

> $110,000 in cash at time of closing plus the above described note making a total of $120,000 down; the balance of $300,000 to be paid in yearly installments of $29,000, or more, including 6% interest. This offer is subject to purchasers being able to sell their present farm @ $189,600 on terms agreeable to them which Broker has up to, and including, January 29, 1965, to negotiate. Purchase includes grain storage & field grinding equipment. Reasonable settlement on any cost on preparation of 1965 crops to be negotiated at time of possession, such as wheat planted, 40 acres; 22 A. turnip seed; 26 A. plowed & fertilized for beets. Sellers to retain 50% of oil and mineral rights.

The instrument declared that the sale was free from encumbrances except current taxes; that the seller would furnish title insurance; and that a good and sufficient deed would be placed in escrow. If the seller did not accept the agreement by January 29, 1965, or was unable to show insurable title within a reasonable time, the contract said that "this agreement shall be at an end unless the seller elects to perfect such title within a reasonable time." It provided for a forfeiture of the earnest money to Burress Realty to the extent of the commission earned in case the purchaser failed to carry out his agreement.

This instrument was signed on January 25th by Burress Realty, as agent for the seller, and by the Jensons on January 28th. By their signatures, the Jensons indicated approval and accepted the sale and agreed that the sum of $10,500 be paid Burress Realty as a commission, or that the sum be retained in case of either forfeiture of earnest money or enforcement by specific performance.

As we have seen, the Richenses, as purchasers, delivered to Burress Realty their note in the amount of $10,000. About February 2, 1965, the Jensons supplied them with a title insurance report showing that the property was subject to a real-estate mortgage of $150,000 in favor of John Hancock Mutual Life Insurance Company, and also subject to a water pipeline easement to the Northern Pacific Railway Company and a gas line easement to Pacific Northwest Pipeline Corporation.

Claiming that the title report showed an inability in the sellers to convey encumbrance-free title and that the sellers could not liquidate the encumbrance within a reasonable time, the Richenses refused to go further with the deal and declared the contract at an end. They did not, however, insist upon a return or cancellation of their $10,000 note which they had delivered to Burress Realty as earnest money. Plaintiffs, as sellers, claiming that they could in due course deliver good title free of encumbrances, brought this action against the Richenses, seeking to recover in damages

the difference between the sale price and the alleged market value, asserting that difference to be $43,000.

At the close of the plaintiffs' evidence on trial by jury, the trial court granted defendants' motion for a dismissal with prejudice, holding the so-called agreement to purchase to be an earnest-money receipt. The court ruled also that the seller, by the terms of the document, had undertaken to deliver an encumbrance-free title and that the existence of a $150,000 mortgage, even under the sellers' promise to pay it off, did not fulfill the promise of title free of encumbrances. Jensons now appeal from the judgment of dismissal and the court's denial of their motion for a new trial.

It is clear from the instrument that the so-called "Agreement to Purchase" was, as the trial court correctly decided, no more than an earnest-money receipt. Despite the promissory words in the opening paragraph that the Richenses agreed to purchase from the "principal for whom Burress Realty, broker, is acting as agent, herein called Seller" the contract was, according to its terms and conditions, expressly dependent upon the following:

> If the purchaser fails to fulfill his obligation under this agreement, time being the essence hereof, then the seller may elect to specifically enforce the agreement or to require a forfeiture thereof, and in the event of a forfeiture all payments made by the purchaser shall be forfeited to Burress Realty to the amount of their regular commission and the balance if any to the seller as liquidated damages.

■■ The trial court's order of dismissal was based on two specific grounds, each of which we find supported by the record. First, the trial court found that the real estate was subject to a $150,000 mortgage and that the sellers failed to show timely ability to pay it off. The property, therefore, was not free from encumbrances, and any promise found in the agreement which could be said to be an undertaking to buy did not become binding upon the buyers unless encumbrance-free title could be tendered. Where the performance of one promise is a condition precedent to a right of action on the promise of another, the first promis-

sor must plead and prove the performance or tender of performance of his promise in order to maintain an action for the breach of the other's promise. 7 Am. Jur. 2d *Contracts* § 362 (1964). This is but a natural corollary to the rule that one contracting party is not required by law to do a useless act and tender performance where the other contracting party cannot or will not perform his part of the agreement. *White & Bollard, Inc. v. Goodenow,* 58 Wn.2d 180, 361 P.2d 571 (1961); *Ziebarth v. Manion,* 161 Wash. 201, 296 Pac. 561 (1931); *Park v. McCoy,* 121 Wash. 189, 208 **Pac. 1098 (1922).**

■ Applying these general principles to the instant situation, we observe that, where a promise to purchase real estate is dependent upon a promise to furnish good and sufficient title, free of encumbrances, the promise to purchase is unenforceable unless the seller tenders such title within the time specified in the agreement, or, if no time be specified, then within a reasonable time.

Proof of the seller's ability to perform by showing a present ability to convey title in accordance with the agreement is a condition precedent to binding the buyer to his promise to purchase. *McVeety v. Harvey Mercantile Co.,* 24 N.D. 245, 139 N.W. 586 (1913); *Cobb v. Willrett,* 313 Ill. 92, 144 N.E. 834 (1924). And the burden rests on the vendor to show good title, not on the buyer to show that the title was defective. 92 C.J.S. *Vendor and Purchaser* § 534 (1955); 55 Am. Jur. *Vendor and Purchaser* § 524 (1946).

These rulings, of course, do not disparage and are altogether in consonance with a corollary rule that, when a purchaser *in possession* brings an action to rescind for want of good title, or other failure on the seller's part, he has the burden of proving the seller's inability to perform. *Soules v. Cox,* 53 Wn.2d 598, 335 P.2d 476 (1959).

■ The other basis for affirmance of the dismissal is the willingness of the defendant purchasers to accept a forfeiture of their note which they had delivered to Burress Realty in earnest of the transaction. Even if we were to hold under the circumstances that defendants breached

their promise to buy the plaintiffs' farm, we think that the trial court properly limited the sellers' remedy to a forfeiture of the note, and that an action for damages based on an asserted difference between the stated price and the market value would not lie. Unless it be demonstrated that provisions for liquidated damages are actually a penalty or are under the circumstances otherwise unlawful, this court will sustain them. *Underwood v. Sterner,* 63 Wn.2d 360, 387 P.2d 366 (1963); *Management, Inc. v. Schassberger,* 39 Wn.2d 321, 235 P.2d 293 (1951).

Although the plaintiffs did not assert a claim to the forfeited earnest money, but instead sought to recover damages based upon an asserted difference in values between the sale price and the alleged decline in market value at the time of purchasers' withdrawal from the deal, we think that the trial court properly found that any remedy plaintiffs might have would be limited to a forfeiture of the liquidated damages as prescribed in the contract. Even though a provision for liquidated damages may not necessarily preclude the remedy of specific performance, if the purchaser fails to complete his purchase, it will effectively limit the amount of recovery in an action for damages at law. *Asia Inv. Co. v. Levin,* 118 Wash. 620, 204 Pac. 808, 32 A.L.R. 578 (1922).

Affirmed.

FINLEY, C. J., ROSELLINI, J. and WARD, J. Pro Tem., concur.

WEAVER, J., concurs in the result.