[No. 5706-2-III.  Division Three.  November 6, 1984.]

WAYNE G. CORDELL, ET AL, *Respondents,* v. NORRIS N. STROUD, ET AL, *Appellants.*

*Michael R. Tabler,* for appellants.

*S. Gay Cordell* and *Scott & Cordell,* for respondents.

THOMPSON, J.—Mr. and Mrs. Norris Stroud appeal an award of damages under the Consumer Protection Act; Mr. Cordell and Mr. Weber cross–appeal on the issue of damages. We affirm in part and reverse in part.

Mr. and Mrs. Stroud are licensed real estate broker and agent, respectively, and operate a real estate business, United Farm Agency, Inc., on 10 acres adjacent to the Wenatchee/Chelan highway. In February 1980, the Strouds entered into a lease with an option to purchase from Donna Wilson. After the agreement expired on July 31, 1981, the Strouds and Ms. Wilson agreed orally to continue on a month–to–month basis.

In early November 1981, Dennis Weber and his partner, Wayne Cordell, contacted Mr. Stroud at his office. They

indicated an interest in leasing or purchasing property with highway frontage suitable for a water slide recreational park. Mr. Stroud suggested a possible lease or sale of land surrounding his office. From that initial meeting until March 1982, Mr. Stroud represented the Strouds were the owners of the property.

On December 31, 1981, the Strouds executed an earnest money agreement to purchase the property. A real estate contract was signed on January 22, 1982. The purchase price was $130,000 with credit for rental payments made during 1980–81, for a reduced price of $115,000.

Sometime in January 1982, purchasers researched the chain of title to the property and found no record of the Strouds' ownership. When Mr. Stroud was questioned about the discrepancy, he told purchasers there must have been a mistake since he did in fact own the property.

Both parties understood any sale would be conditioned upon a proper zone change to enable construction of the water slide. Mr. Stroud attended a planning commission meeting on behalf of the purchasers seeking the necessary change. The commission approved the zone change and on March 9, 1982, all three parties signed an earnest money agreement to purchase the property for $195,000. The property was divided into two parcels, parcel A being an outright purchase, and parcel B, a 5–year lease agreement with option to purchase. Shortly after the earnest money agreement was signed, the purchasers received their copy of the preliminary title report which showed the Strouds purchased the property on January 22, 1982. Subsequently, there were several letters exchanged between the parties through their attorneys attempting to renegotiate the purchase price. On June 4, 1982, the purchasers notified the Strouds they were willing to perform under the terms of the earnest money agreement, but the Strouds refused to proceed.

The Superior Court, ruling substantially in favor of the purchasers, awarded specific performance and damages conditioned upon tender by the purchasers of all docu-

ments and money owed under the agreement. In addition, the court found a per se violation of the Consumer Protection Act and awarded $1,000 treble damages, attorney fees and costs. Purchasers failed to tender the necessary documents and money so the judgment was vacated with respect to specific performance and damages, but was confirmed as to the CPA award.

The Strouds first assign error to the finding the violation of the real estate brokers and salesmen act, RCW 18.85.230, constituted a per se violation of the CPA.[1] A violation of the CPA may be per se, *State v. Reader's Digest Ass'n,* 81 Wn.2d 259, 276, 501 P.2d 290 (1972), or de facto by showing an unfair or deceptive act which affects the public interest, *Anhold v. Daniels,* 94 Wn.2d 40, 614 P.2d 184 (1980).

In order to establish a per se violation, the conduct must meet a twofold test: (1) it must be illegal, *i.e.,* unlawful; and (2) it must be against public policy as declared by the Legislature or the judiciary. *Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 358, 581 P.2d 1349 (1978).

The first element, illegal action, is established by the Strouds' failure to disclose the ownership of the property, a violation which, under RCW 18.85.230, can be a gross misdemeanor. The second element requires a showing the action is against public policy as declared by the Legislature or the judiciary. In *Sato v. Century 21 Ocean Shores Real Estate,* 101 Wn.2d 599, 602, 681 P.2d 242 (1984), the court stated:

---

[1]RCW 19.86.020 provides:

"Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

RCW 19.86.090 (Laws of 1970, 1st Ex. Sess., ch. 26, § 2, p. 202):

"Any person who is injured in his business or property by a violation of RCW 19.86.020 . . . may bring a civil action in the superior court to enjoin further violations, to recover the actual damages sustained by him, or both, together with the costs of the suit, including a reasonable attorney's fee, and the court may in its discretion, increase the award of damages to an amount not to exceed three times the actual damages sustained: *Provided,* That such increased damage award for violation of RCW 19.86.020 may not exceed one thousand dollars." (Amended to $10,000, Laws of 1983, ch. 288, § 3, p. 1403.)

Such a legislative declaration [of a public interest] is not present in RCW 18.85. *Compare* RCW 18.85.010 *et seq. with* RCW 48.01.030. In fact, enforcement of RCW 18.85 is placed in the director of licensing, the Attorney General and prosecuting attorney, RCW 18.85.343, .345, .350. Those persons serve the public policy by their enforcement powers.

We conclude therefore, RCW 18.85 does not contain the legislative declaration necessary to give rise to a per se violation of the CPA.

The question remains whether there are compelling reasons to judicially declare this type of conduct contrary to public policy. We must decline to do so. There was no evidence of the public's involvement in this dispute. The property was not listed with the Multiple Listing Service nor were there representations made to the public by other means of advertising. This was a single, isolated transaction. Given the decision of the court in *Sato,* the proper avenue of redress is through the enforcement powers of the director of licensing, the Attorney General, or the prosecuting attorney.

In the alternative, purchasers argue a de facto violation of the CPA as outlined in *Anhold v. Daniels, supra* at 46. Therein the court states conduct has an impact on public interest if:

(1) [T]he defendant by unfair or deceptive acts or practices in the conduct of trade or commerce has induced the plaintiff to act or refrain from acting; (2) the plaintiff suffers damage brought about by such action or failure to act; and (3) the defendant's deceptive acts or practices have the potential for repetition.

The case fails to meet the *Anhold* criteria in that the purchasers did not prove the Strouds' act has the potential for repetition. "In particular, there must be shown a real and substantial potential for repetition, as opposed to a hypothetical possibility of an isolated unfair or deceptive act's being repeated." *Eastlake Constr. Co. v. Hess,* 102 Wn.2d 30, 52, 686 P.2d 465 (1984). Therefore, we reverse the court's ruling regarding the existence of a violation of the

CPA and vacate the CPA violation award.

Based on our ruling above, we need not consider the additional CPA issues raised by the Strouds.

The purchasers cross–appeal and assign error to the measure of damages. The Superior Court had ordered specific performance of the earnest money agreement and had awarded $23,600 in damages. The damages represented the Strouds' potential profit less lease payments on parcel B. Purchasers contend the trial court should have assigned them the vendee's interest in the Wilson/Stroud contract; in essence, specific performance with a larger damage award. However, in their supplemental brief on appeal, purchasers ask for alternative damages including (1) $65,000 based on *Cogan v. Kidder, Mathews & Segner, Inc.,* 97 Wn.2d 658, 648 P.2d 875 (1982); (2) liquidated damages of $19,500 as provided for in the earnest money agreement;[2] or (3) a minimum of $5,000 damages incurred in reliance.

■ Counsel indicated in oral argument that a change in the Wenatchee water slide market made specific performance an undesirable measure of relief for purchasers. Therefore, they elected not to avail themselves of the relief of specific performance and damages as first awarded by the trial court. Having failed to appeal the vacation of that judgment, specific performance has become a moot issue. Additionally, we will not address the alternate theories of damages because they were not raised at trial. Purchasers did not ask for such relief in their complaint and raised the issue of alternative damages for the first time in their supplemental brief on appeal. *See Sims v. Horton,* 43 Wn.2d 907, 264 P.2d 879 (1953); *Capper v. Callahan,* 39 Wn.2d 882, 239 P.2d 541 (1952). It may well be the trial court would have awarded damages or would have deemed it appropriate to enter judgment other than the requested specific performance, *Zastrow v. W.G. Platts, Inc.,* 57

---

[2]The earnest money provided for liquidated damages of 10 percent of the agreed purchase price.

Wn.2d 347, 357 P.2d 162, 360 P.2d 354 (1960); *Brazil v. Auburn,* 93 Wn.2d 484, 610 P.2d 909 (1980), but it was not asked to do so. The facts in this case warrant a finding that purchasers are entitled to monetary relief. However, the posture of this appeal is such that this court is precluded from granting purchasers the relief they now request without indulging in inappropriate judicial creativity.

The trial court's rulings regarding specific performance and damages are affirmed; its finding the Strouds violated the Consumer Protection Act is reversed, and the purchasers' request for alternative damages for the first time on appeal is denied.

MUNSON, C.J., concurs.

McINTURFF, J. (dissenting)—While I agree with the majority holding on the consumer protection issue, I do not agree with the conclusion the purchasers are not entitled to relief because they elected to sue for specific performance and then failed to avail themselves of the judgment for specific performance and damages. This court may fashion a remedy for purchasers without engaging in what the majority terms "inappropriate judicial creativity."

A chronology of events is important with respect to this court's authority to consider legal as well as equitable remedies. On February 9, 1983, the trial court granted specific performance and damages, conditioned upon performance of certain acts within 30 days, and damages and attorney fees under the Consumer Protection Act (CPA). On March 11, 1983, a notice of appeal was filed by the broker. On March 21, 1983, a notice of cross appeal was filed and on May 16, 1983, the trial court vacated the specific performance and damage award because of the purchasers' failure to perform, but let the CPA award remain. Consequently, the trial court in reaffirming the CPA award indirectly reaffirmed its findings that the broker had engaged in intentional misrepresentation which had caused damage to the purchasers.

This court accepted review of the trial court's decision on March 11, 1983, when the notice of appeal was filed by the broker. RAP 6.1.

> An appeal suspends the time allowed in the judgment or order appealed from for the performance of a condition which affects a party's substantive right or obligation. As a result, the time for performance of the condition in the judgment or order begins after the appellate court's decision becomes effective.

*King v. King*, 2 Wn. App. 386, 388–89, 468 P.2d 464 (1970) (citing *Borrow v. El Dorado Lodge*, 75 Ariz. 218, 254 P.2d 1027 (1953); 4 Am. Jur. 2d *Appeal and Error* § 363 (1962); 28 A.L.R. 1029 (1924)). Therefore, the filing of a second appeal by the purchasers from the vacation order entered by the trial court was not necessary because all action in the trial court was stayed by acceptance of the original notice of appeal filed by the broker. *See* RAP 7.2(e).

Whether the specific performance and damage award fashioned by the trial court was appropriate is not an issue this court will consider, for the remedy has become moot. In the summer of 1983, during the pendency of this appeal, another water slide was built in the Wenatchee area, negating the necessity for acquisition of the broker's property.

However, the purchasers should not be denied a remedy. Responding to the inadequacy of specific performance, purchasers submitted a supplemental appellate brief on their right to money damages, to which the broker replied. Included in their brief were alternative measures of damages: $19,500 based on a liquidated damage clause in the earnest money agreement, or $5,000 based on a reliance interest.

In this instance the issue before the trial court was whether the broker had intentionally misrepresented the ownership of the property causing damage to the purchasers. The trial court had an option to award either specific performance, or legal damages. It chose to do both, by granting specific performance, damages and damages under the CPA. Certainly, this court has the authority to consider

no less than what the trial court considered and granted. *Zastrow v. W.G. Platts, Inc.,* 57 Wn.2d 347, 350, 357 P.2d 162, 360 P.2d 354 (1960) makes the following comment:

> As to the authority of an equity court to award damages, this question is well settled. The rule is this—once a court of equity has properly acquired jurisdiction over a controversy, such a court can and will grant whatever relief the facts warrant, including the granting of legal remedies. See 49 Am. Jur. 192; 81 C. J. S. 778; also, *Twohy v. Slate Creek Mining Co.,* 31 Wn. (2d) 668, 198 P. (2d) 832 (1948), and *Hubbell v. Ward,* 40 Wn. (2d) 779, 246 P. (2d) 468 (1952). The obvious purpose of this rule is to avoid a needless multiplicity of litigation, *Biggs v. Gilbert–Tilbury Co.,* 106 Wash. 271, 179 Pac. 839 (1919). In the case at bar, respondents' prayer for relief, quoted above, not only requested specific performance, but also "such other and further relief as to the court seems meet and proper."

The liquidated damage clause in the earnest money agreement provided the following:

> It is agreed, if either seller or buyer fails to perform his part of this agreement, he shall forthwith pay to the other party hereto a sum equal to 10% of the agreed price of sale as consideration for the execution of this agreement by such other party.

The agreed price of sale was $195,000. Finding of fact 18 sets forth the following:

> Subsequent to the receipt of the title report a series of letters were exchanged by the parties and their counsel. In these letters plaintiffs were seeking to settle their claim against defendants based on defendants' misrepresentation of their ownership of the real property. No settlement could be reached and on June 4, 1982, plaintiffs, through their attorney, notified defendants through their attorney that the plaintiffs were willing to perform under the terms of the Earnest Money Agreement. No time for performance was set forth in the Earnest Money Agreement. Plaintiff's tender of performance under the Earnest Money Agreement was due upon defendant's preparation of the closing documents. Defendants refused to proceed to prepare any closing documents when they were notified of plaintiffs' claim. Plaintiffs

were ready, willing, and able to perform under the Earnest Money Agreement on 4 June 1982.

In *Ashley v. Lance,* 80 Wn.2d 274, 280, 493 P.2d 1242, 62 A.L.R.3d 962 (1972), the court stated:

We have looked with favor on liquidated damages clauses. *E.g., Underwood v. Sterner,* 63 Wn.2d 360, 387 P.2d 366 (1963); *Management, Inc. v. Schassberger,* 39 Wn.2d 321, 235 P.2d 293 (1951). Such clauses will be upheld "[u]nless it be demonstrated that provisions for liquidated damages are actually a penalty or are under the circumstances otherwise unlawful . . .". *Jenson v. Richens,* 74 Wn.2d 41, 47, 442 P.2d 636 (1968).

Unless the trial court were to determine on remand that this particular contract clause was intended by the parties as a penalty or that the amount of $19,500 was an unreasonable forecast in March 1982 of the harm that would be occasioned should breach occur, liquidated damages would be the appropriate legal remedy to be awarded in lieu of specific performance.

The plaintiffs have been wronged by an intentional misrepresentation by which the broker would profit $65,000. Under these circumstances they are entitled to damages for that wrong.

The cause should be remanded to the Superior Court for consideration of an award of liquidated damages or such other damages as the court deems reasonable.

Review denied by Supreme Court January 18, 1985.