[No. 12740-3-I.   Division One.   August 12, 1985.]

WILLIAM H. JACKSON, ET AL, *Respondents,* v.
J. J. HARKEY, ET AL, *Appellants.*

*Harpold & Fiori* and *Kenneth W. Fornabai,* for appellants.

*William R. Levinson,* for respondents.

COLEMAN, J.—The Harkeys, husband and wife, d/b/a The Harkey Construction Company, a/k/a J. J. Harkey Construction Company (Harkey), appeal from a judgment awarding damages against them for a violation of the Washington Consumer Protection Act, RCW 19.86.010 *et seq.* Harkey assigns error to the trial court's conclusions that (1) the Consumer Protection Act applies to the sale of the real estate at issue; (2) the action should not be dismissed as barred by the statute of limitation; (3) privity is not required in a consumer protection action; (4) the action should not have been dismissed at the close of the Jacksons' case; and (5) damages should be based on the Jacksons' out-of-pocket cost of repairs. The Jacksons cross-appeal, alleging that the trial court should have awarded them the full contract price for the repairs. We conclude that the Consumer Protection Act should not have been applied as a basis for recovery under the facts of this case; consequently, we address only that issue, and we reverse.

## FACTS

Harkey does not assign error to any of the trial court's findings of fact; therefore, we must accept them as the established facts of the case. *Yakima Cement Prods. Co. v. Great Am. Ins. Co.,* 93 Wn.2d 210, 213, 608 P.2d 254 (1980);

*In re Santore*, 28 Wn. App. 319, 323, 623 P.2d 702, *review denied*, 95 Wn.2d 1019 (1981). Our statement of facts is drawn from the trial court's findings.

In April 1976, a new dwelling in Auburn, Washington, constructed by Harkey, was sold to a couple, the Cutlers. Harkey had joined the Home Owners Warranty Corporation which enabled his company to register, advertise, and insure homes under the Home Owners Warranty Corporation 10-year home protection plan (HOW warranty). Harkey commenced the registration process for approximately 25 homes including the dwelling purchased by the Cutlers. As a consequence of registering the homes, Harkey could obtain signs to place in the house windows, advertising that the homes were protected by the HOW warranty.[1] When the Cutlers inspected their future house before purchasing it, they saw such a sign in the window. However, Harkey did not complete the registration of the 10 homes in the area where the Cutler residence was located, and none of these homes, including the Cutler residence, was ever actually covered by the HOW warranty.

In October 1978, after residing in this house for 2 years, the Cutlers sold the house to another couple, the Jacksons. At the time of the sale, the Cutlers informed the Jacksons that the house was covered under the HOW warranty for about 8 more years. The trial court found that this was a material representation to the Jacksons.

In January 1980, the Jacksons noticed a musty odor in the house. In May or June 1980, Mr. Jackson looked into the crawl space and observed that some of the floors and the supporting joists and beams had become rotten.

In December 1981, the Jacksons brought an action against Harkey for breach of implied warranty and negligence. On April 27, 1982, the Jacksons filed an amended complaint alleging violation of the Consumer Protection Act, RCW 19.86.010 *et seq.* Following a bench trial in

---

[1]The signs stated: "HOW Home Owners Warranty 10-Year Protection" or similar language. Finding of fact 7; plaintiff's exhibit 3.

December 1982, the trial court found that Harkey's use of the HOW poster in the window of the Cutler/Jackson house when the dwelling was not actually covered under the HOW program induced the Cutlers and later the Jacksons to purchase the home. The court found that, as a result of Harkey's actions, the Jacksons ultimately suffered damages for the repairs they had done to the house and for other expenses. The trial court reasoned that Harkey's actions were not part of an isolated incident since Harkey had commenced but failed to complete the registration process necessary to insure at least 10 other homes in the same area as the Cutler/Jackson home; therefore, the court found that Harkey's conduct and practices had the potential for repetition. Conclusion of law 6. The trial court concluded that Harkey's actions constituted a violation of the Consumer Protection Act. Conclusion of law 3.

CONSUMER PROTECTION ACT

██ Since we must accept the findings of fact, our review is limited to determining whether the findings support the trial court's conclusions of law and judgment. *Silverdale Hotel Assocs. v. Lomas & Nettleton Co.*, 36 Wn. App. 762, 766, 677 P.2d 773, *review denied*, 101 Wn.2d 1021 (1984); *In re Santore, supra* at 323.

In order for a private individual to bring an action under RCW 19.86, the conduct complained of must: (1) be unfair or deceptive; (2) be within the sphere of trade or commerce; and (3) impact the public interest. *Anhold v. Daniels*, 94 Wn.2d 40, 45, 614 P.2d 184 (1980).

*Eastlake Constr. Co. v. Hess*, 102 Wn.2d 30, 49, 686 P.2d 465 (1984). The third requirement, impact on the public interest, is shown by evidence that:

1. The defendant, by unfair or deceptive acts or practices in the conduct of trade or commerce, has induced the plaintiff to act or refrain from acting;

2. The plaintiff suffers damage brought about by such action or failure to act;

3. The defendant's deceptive acts or practices have the potential for repetition. *Anhold*, 94 Wn.2d at 46.

*Eastlake,* at 50. Our focus in this case is on the third prong of this public interest formula.

Harkey contends that the evidence, which he does not dispute, does not establish a potential for repetition of the misrepresentation that the homes were covered by the HOW warranty. Indeed, as the trial court stated in a letter to the parties following trial, "Whether similar displays of signs were put in the windows of other houses, I am unable to determine from the evidence before me." Harkey argues that his allegedly culpable activity occurred during only an isolated real estate transaction to which the Consumer Protection Act should not apply. The Jacksons contend, however, that the evidence showing Harkey's incomplete registration of other houses satisfies the requirement of a potential for repetition.

In *Eastlake,* at 52, the court explained that the potential for repetition must be "real and substantial . . ., as opposed to a hypothetical possibility of an isolated unfair or deceptive act's being repeated." The burden of proof is upon the plaintiff who is bringing the consumer protection action. The potential for repetition may be shown by evidence of a protracted course of the defendant's inducing and damaging conduct. *Eastlake,* at 52.

Our Supreme Court has most readily identified such a protracted course of conduct and a real potential for repetition where there is evidence that others have been injured by deceptive representations or acts similar to the ones which damaged the plaintiff. 3 Washington State Bar Ass'n, *Commercial Law Deskbook* § 27.4(4)(a), at 27–12, 27–13 (1982); *see, e.g., Anhold v. Daniels,* 94 Wn.2d 40, 47, 614 P.2d 184 (1980) (solicitation of one prior investor in restaurant venture by deceptive practices would be sufficient to establish potential for repetition); *Keyes v. Bollinger,* 31 Wn. App. 286, 288, 292–93, 640 P.2d 1077 (1982) (a contractor's repeated erroneous estimates of completion or repair dates to Keyes and other buyers, acts which were a matter of the contractor's business practice, affected the public interest). The court has also found a potential for

repetition where the deceptive acts or practices occurred routinely in the course of the defendant's business. *Bowers v. Transamerica Title Ins. Co.,* 100 Wn.2d 581, 592, 675 P.2d 193 (1983) (unauthorized practice of law by escrow agent was not an isolated breach of duty because "Transamerica's business of real estate closings routinely involved the preparation of documents constituting the unauthorized practice of law."). As our courts have stated, "It is the likelihood that additional buyers will be injured in exactly the same fashion that changes a factual pattern from a private dispute to one that affects the public interest." *McRae v. Bolstad,* 101 Wn.2d 161, 166, 676 P.2d 496 (1984).

The court will not find an impact on the public interest when it cannot determine from the evidence whether the defendant's act "is a deceptive practice or simply an inadvertent isolated mistake . . ." *Sato v. Century 21 Ocean Shores Real Estate,* 101 Wn.2d 599, 602, 681 P.2d 242 (1984) (inaccurate placement of "For Sale" sign led plaintiffs to believe that a lot they thought they had purchased was for sale when actually it was owned by a third party; there was no evidence of a continuing course of conduct or repetition of deceptive acts). The circumstances in this case fall between the extremes of a routine injurious practice and an inadvertent isolated mistake.

The critical question to resolve here is whether Harkey's act of not completing the registration of other homes, without a showing that any of the homes had been represented as being covered under the warranty, is sufficient to present a pattern of deceptive practices. Comment, *Private Suits Under Washington's Consumer Protection Act: The Public Interest Requirement,* 54 Wash. L. Rev. 795, 809 (1979) (*Private Suits*); 3 *Commercial Law Deskbook* § 27.4(4)(b), at 27–14.

This inquiry is essentially a factual one. In the record presented to us, we find that, although the potential for repetition of injury may have existed because Harkey had access to the HOW signs, there is no proof that any consumers other than the Cutlers (or the Jacksons by way of

the Cutlers) could ever know that Harkey had commenced registration of the houses in the HOW warranty program. Clearly, Harkey was the seller of the houses and had the capacity to misrepresent to the public that the homes were covered by the HOW warranty; however, there is no direct or circumstantial evidence that Harkey misrepresented the HOW coverage in a way that could have affected anyone other than the respondents. The evidence shows only that Harkey held the representation out in one instance, and it would be speculation to find on this record that there was a real and substantial potential for Harkey to repeat the conduct.

We emphasize that the trial court was unable to determine from the evidence whether the misrepresentation was repeated with other actual or potential purchasers, *i.e.*, whether HOW signs were placed in the windows of other homes. Thus, the evidence in this case falls short of establishing an actual impact on the public interest under the 3–part test set forth in *Anhold v. Daniels, supra* at 45, and subsequent cases. *See, e.g., Rouse v. Glascam Builders, Inc.*, 101 Wn.2d 127, 134–35, 677 P.2d 125 (1984) (no evidence that defendant builder acted unfairly or deceptively toward other condominium owners in development); *Cordell v. Stroud*, 38 Wn. App. 861, 865, 690 P.2d 1195 (1984), *review denied*, 103 Wn.2d 1015 (1985) (quoting *Eastlake*, at 52; evidence that defendants misrepresented to plaintiffs that the defendants owned the property did not prove that their act had the potential for repetition; the property was not listed with the multiple listing service or otherwise advertised; thus, there was no evidence of public involvement).

The court has been persuaded that a violation of the Consumer Protection Act occurred when the plaintiff showed that the alleged violator engaged in misleading advertising over a period of time, without establishing that other individuals had in fact been misled by such deception. *See, e.g., Ulberg v. Seattle Bonded, Inc.*, 28 Wn. App. 762, 626 P.2d 522 (1981); 3 *Commercial Law Deskbook* §

27.4(4)(a), at 27–13. However, advertising cases such as *Ulberg* and *Fisher v. World–Wide Trophy Outfitters,* 15 Wn. App. 742, 551 P.2d 1398 (1976) present a different situation than the one before us. In advertising cases, the alleged violator represents to the general public that he can or will accomplish certain things when in fact he cannot or does not. In *Ulberg,* at 763–64, and in *Fisher,* at 748, for example, the defendants placed advertisements in publications with general circulations. In *Ulberg,* a collection agency representative advertised that he could collect unpaid child support anywhere and would pay most of the costs, but then refused to pay the plaintiff. In *Fisher,* the defendant promised good results on game hunts, but the court found the defendant's representations were false and deceptive since none of the promises came true for the plaintiffs. *See also McRae v. Bolstad, supra* at 166 (listing of property in multiple listing service directory and sale of house without disclosing the house's defects; possible misrepresentation in prior sale, plus listing, created the potential for repetition). In those cases, the advertisements were more than isolated mistakes and clearly carried the potential to deceive a "substantial portion of the purchasing public." *Fisher,* at 748. Placing one sign in the window of one house does not create the same likelihood that the public will be affected. *See Private Suits,* at 811–12.

We do not mean to infer in this opinion that the only means of establishing a potential for repetition is by proof of similar injury to others, although such proof is often the most persuasive way to satisfy this requirement. In the present case, however, the absence of such evidence is critical. We have not been provided with any testimony by Harkey in the verbatim report of proceedings or the clerk's papers. The trial court's findings of fact do not reference any testimony from him. Without Harkey's testimony, neither the trial court nor this court can determine the circumstances that led to the placing of the HOW sign in the window of the Cutler residence followed by the failure to complete registration of the homes. Moreover, at oral argu-

ment Harkey's counsel stated that it was the realtor who placed the sign in the window. It is conceivable that the placing of the sign was inadvertent, unintentional, or without the knowledge of Harkey.

The Consumer Protection Act focuses on a defendant's deceptive acts or practices which have a potential for repetition. Where it is clear that a defendant has engaged in, is aware of, or has condoned such activity on the part of agents for whom the defendant is responsible, the defendant and the agent are liable under the Consumer Protection Act. *See, e.g., Bowers v. Transamerica Title Ins. Co., supra* (closing agent of title insurance company engaged in unauthorized practice of law by preparing closing documents for sale of real estate, and this practice by agents of the company was part of its routine business); *State v. Ralph Williams' North West Chrysler Plymouth, Inc.,* 87 Wn.2d 298, 322, 553 P.2d 423 (1976), *appeal dismissed,* 430 U.S. 952 (1977) (if a corporate officer participates in or, with knowledge, approves of the conduct, then the officer, as well as the corporation, is liable under the Consumer Protection Act). The participation or knowledge of the defendant enhances the potential for repetition. Without such culpable participation or knowledge, proof of potential for repetition is difficult to establish. Considering all of the circumstances in this case, we hold that the third prong of the *Anhold* requirement has not been satisfied.

The judgment of the trial court is reversed.

GROSSE, J., and HOPP, J. Pro Tem., concur.

Reconsideration denied September 11, 1985.

Review denied by Supreme Court November 8, 1985.