[No. 43838. En Banc. January 8, 1976.]

ETHEL LIGHTFOOT, *Appellant*, v. KENNETH MACDONALD, ET AL, *Respondents*.

*Woodrow A. Wallen,* for appellant.

*Lane, Powell, Moss & Miller,* by *David C. Lycette,* for respondents.

*Douglas C. Baldwin,* amicus curiae, on behalf of Washington Bar Association.

ROSELLINI, J.—According to the allegations of the complaint in this action, the appellant employed the respondent to defend her against the threatened foreclosure of a mortgage on an apartment house which she owned. She alleged that the respondent failed to take any steps in her defense or to advise her of her rights and that as a result the mortgage was foreclosed and the mortgagee purchased the property for the amount of the outstanding indebtedness. This failure, she alleged, caused the loss of her home and other rental units valued at over $50,000. She alleged that the acts of the respondent were deceptive and unfair within the meaning of RCW 19.86.020 and constituted a violation

thereof, as well as a departure from the standard of care reasonably expected of attorneys at law, and a breach of his agreement with the appellant.[1] Damages were sought in the amount of $50,000 plus costs, reasonable attorney fees and other disbursements, and "such and other relief as the court deems just and equitable."[2]

It appearing that the appellant's claim based upon malpractice had accrued more than 3 years prior to the date the action was instituted and was therefore barred by the applicable statute of limitations (RCW 4.16.080), the Superior Court dismissed the action. It held that the transaction was exempt from the coverage of the Consumer Protection Act, under the provisions of RCW 19.86.170 as they existed in 1970 and 1971, when the appellant's claim accrued.

The appellant petitioned this court for certiorari. We consented to treat the petition as an appeal and to retain the matter in this court, since it presents a question of law heretofore undecided in this jurisdiction. The single assignment of error is directed to the court's ruling that the Consumer Protection Act, RCW 19.86, which has a 4-year statute of limitations, does not provide the appellant a remedy.

---

[1] The respondent admitted that he was retained by the appellant but denied that he was retained to handle her delinquent account with the mortgagee bank. The appellant alleged that when, in October 1970, she received the summons and complaint in the foreclosure action, she took it in an envelope to the respondent's office. He was out of town at the time, and she left it with the receptionist. The respondent said that it did not come to his attention until he reviewed the appellant's file on December 29 or 30, 1970, at which time he discovered the unopened envelope. With the assistance of another attorney in his firm, he thereafter took steps to vacate the decree of foreclosure and to negotiate a settlement with the bank. However, the appellant dismissed the firm and obtained the services of other counsel on March 23, 1971.

Represented by such counsel, the appellant attempted to have the foreclosure decree vacated. The Superior Court denied the motion, and the Court of Appeals, Division One, Panel 1, affirmed (No. 1184-1, February 20, 1973), holding in an unpublished opinion that the appellant's evidence showed that she had no meritorious defense to the foreclosure.

[2] RCW 19.86.090 provides that the court may, in its discretion, award treble damages.

We find it unnecessary to consider whether the Superior Court was correct in its conclusion that the 1974 amendment to RCW 19.86.170 (Laws of 1974, 1st Ex. Sess., ch. 158, § 1) was not intended to operate retroactively.[3] We are of the opinion that the alleged conduct of the respondent was not an unfair or deceptive act or practice in the conduct of any trade or commerce as those terms are employed in the Consumer Protection Act.

It is the obvious purpose of the Consumer Protection Act to protect the public from acts or practices which are injurious to consumers and not to provide an additional remedy for private wrongs which do not affect the public generally. This purpose is stated in RCW 19.86.920:

> The legislature hereby declares that the purpose of this act is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition.

That provision continues:

> It is the intent of the legislature that, in construing this act, the courts be guided by the interpretation given by the federal courts to the various federal statutes dealing with the same or similar matters . . . [and] this act shall be liberally construed that its beneficial purposes may be served.
>
> It is, however, the intent of the legislature that this act shall not be construed to prohibit acts or practices which . . . are not injurious to the public interest, . . .

The federal statute prohibiting unfair and deceptive acts or practices in commerce is found in the Federal Trade Commission Act, 15 U.S.C. § 45. The basic purpose of that chapter is to protect the public. *Federal Trade Comm'n v. Cinderella Career & Finishing Schools, Inc.*, 404 F.2d 1308 (D.C. Cir. 1968); 87 C.J.S. *Trade-marks, Trade-names and*

---

[3] Prior to the 1974 amendment, RCW 19.86.170 exempted actions or transactions otherwise permitted, prohibited or regulated by a regulatory body or officer acting under statutory authority of this state or the United States. The 1974 amendment narrowed the exemption to include only actions or transactions permitted by such a regulatory body or officer.

*Unfair Competition* §§ 226-27 (1954); 55 Am. Jur. 2d *Monopolies, Restraints of Trade and Unfair Trade Practices* § 747 (1971). There is no private remedy provided in the federal act and all enforcement is left in the hands of the Federal Trade Commission. Under that act the United States Supreme Court has held that to justify filing a complaint, the public interest must be specific and substantial. *Federal Trade Comm'n v. Klesner*, 280 U.S. 19, 74 L. Ed. 138, 50 S. Ct. 1, 68 A.L.R. 838 (1929). The court said in that case that 15 U.S.C. § 45 does not provide private persons with an administrative remedy for private wrongs and the community's interest in seeing that private rights are respected is not a sufficient public interest. Public interest may exist although the practice deemed unfair does not violate any private right.

We have recognized that when the Attorney General brings an action under this statute, he acts for the benefit of the public. *Seaboard Sur. Co. v. Ralph Williams' Northwest Chrysler Plymouth, Inc.*, 81 Wn.2d 740, 746, 504 P.2d 1139 (1973). In that case we said:

> The Attorney General's responsibility in bringing cases of this kind is to protect the public from the kinds of business practices which are prohibited by the statute; it is not to seek redress for private individuals. Where relief is provided for private individuals by way of restitution, it is only incidental to and in aid of the relief asked on behalf of the public.

Since the purpose of the act is to protect the public interest, it is natural to assume that the legislature, in granting a private remedy in RCW 19.86.090, intended to further implement the protection of that interest. It follows that an act or practice of which a private individual may complain must be one which also would be vulnerable to a complaint by the Attorney General under the act. A breach of a private contract affecting no one but the parties to the contract, whether that breach be negligent or intentional, is not an act or practice affecting the public interest.

Since the federal act has no provision for private reme-

dies, there are no federal cases to guide the court (*see* RCW 19.86.920) except those cases which declare the purpose of the act in general, that is, the purpose to protect the public interest. However, we are directed by the statute to look to "the various federal statutes dealing with the same or similar matters" in resolving questions which arise under the state act.

The federal antitrust laws are relevant in that they also deal with problems of business practices, regulating, as they do, monopolies and combinations in restraint of trade. 15 U.S.C. § 15 authorizes suits by persons injured. It provides mandatory treble damages, whereas the state Consumer Protection Act, RCW 19.86.170, makes the award of treble damages discretionary.

Cases decided under 15 U.S.C. § 15 have consistently held that the purpose of giving private parties treble damages was not merely to provide private relief but was to serve as well the high purpose of enforcing the antitrust laws. *See* 15 U.S.C.A. § 15 nn.4-7. In *Fortner Enterprises, Inc. v. United States Steel Corp.*, 293 F. Supp. 762 (W.D. Ky. 1966), *aff'd*, 404 F.2d 936 (6th Cir. 1968), *rev'd on other grounds and remanded*, 394 U.S. 495, 22 L. Ed. 2d 495, 89 S. Ct. 1252 (1969), *on appeal after remand, rev'd and remanded*, 452 F.2d 1095 (6th Cir. 1971), *cert. denied*, 406 U.S. 919, 32 L. Ed. 2d 119, 92 S. Ct. 1773 (1972), it was said that it is not the purpose of antitrust laws to furnish treble damages where there have been only ordinary breaches of contract, conspiracies to injure reputation or property, etc. In *Silvercup Bakers, Inc. v. Fink Baking Corp.*, 273 F. Supp. 159 (S.D.N.Y. 1967), the court said that private antitrust suits are designed to further a broad public interest, transcending private objectives of the parties.

We think the evident purpose of the legislature in providing a private remedy in RCW 19.86.170, was much the same as that which Congress expressed in providing for treble damage actions under the antitrust laws. Its purpose was to enlist the aid of private individuals damaged by acts or practices which were forbidden in the acts, to assist in

the enforcement of the laws. Such assistance is desirable only if it serves the public interest and implements the purpose of the statute.

The appellant has made no showing that the acts of the respondent of which she complains were injurious to the public, either as unfair methods of competition or unfair or deceptive practices. Her complaint is merely that she and she alone has suffered damage by reason of the respondent's failure to perform his contract.

There is no suggestion that the respondent advertised his services or solicited the appellant or others to become his client. This is not surprising, since such activities are forbidden to attorneys. CPR DR 2-101 through 2-105. The appellant approached the respondent voluntarily, and with expectations based upon his reputation, which she had learned of from others whose opinions she apparently respected.

As the statute indicates and as we have previously recognized, in determining the scope of the act and the types of acts or practices prohibited by it, this court must look to the cases which have been decided under the federal act. *State v. Ralph Williams' North West Chrysler Plymouth, Inc.*, 82 Wn.2d 265, 510 P.2d 233 (1973); *Johnston v. Beneficial Management Corp. of America*, 85 Wn.2d 637, 538 P.2d 510 (1975). In directing the court to seek guidance from those cases, the legislature undoubtedly had in mind the fact that under the federal act the decision whether a practice or act is one which is proscribed, rests with the Federal Trade Commission, an administrative agency. In *Federal Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 31 L. Ed. 2d 170, 92 S. Ct. 898 (1972), the United States Supreme Court said, at page 249:

> A court cannot label a practice "unfair" under 15 U. S. C. § 45(a)(1). It can only affirm or vacate an agency's judgment to that effect. "If an order is valid only as a determination of policy or judgment which the agency alone is authorized to make and which it has not made, a judicial judgment cannot be made to do service for an administrative judgment." [Citing *SEC v. Chenery Corp.*, 318

U.S. 80, 88 (1943).] And as was repeated on other occasions:

> "For the courts to substitute their or counsel's discretion for that of the Commission is incompatible with the orderly functioning of the process of judicial review. This is not to deprecate, but to vindicate (see *Phelps Dodge Corp.* v. *Labor Board,* 313 U. S. 177, 197), the administrative process, for the purpose of the rule is to avoid 'propel[ling] the court into the domain which Congress has set aside exclusively for the administrative agency.' [*SEC v. Chenery Corp.*] 332 U. S., at 196." *Burlington Truck Lines* [*v. United States,* 371 U.S. 156, 9 L. Ed. 2d 207, 83 S. Ct. 239 (1962)] at 169.

Since the legislature did not see fit to set up an agency to administer the Consumer Protection Act, the courts of this state do not sit as reviewing bodies to pass upon the propriety of an administrative decision but must decide in the first instance whether an act or practice is unfair or deceptive and whether it is in "trade or commerce." In making such a determination, our only guide must be the one provided by the legislature, the decisions of federal courts approving or rejecting administrative determinations under the act. *State v. Ralph Williams' North West Chrysler Plymouth, supra; Johnston v. Beneficial Management Corp., supra.*

Thus it behooves a complainant, if our own decided cases provide no precedent, to bring to the court a case or cases in which federal courts have found the same act or practice of which he complains, or one of the same nature, to be within the prohibition of the statute. The appellant in this action cites only one federal case which has dealt with the question whether an attorney's acts pursuant to his contractual relation with his client are covered by statutes governing trade or commerce. That case, recently decided by the United States Supreme Court, is *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 44 L. Ed. 2d 572, 95 S. Ct. 2004 (1975). The court there held that the Bar Association of Fairfax County, Virginia, violated section one of the Sherman (antitrust) Act when it prescribed a minimum fee

schedule which effectively fixed the price of legal services for conducting title searches, a search necessary in every case where property was purchased in the county. Since a significant portion of the funds and insurance involved in the purchase of homes in the county came from outside the state of Virginia, it was determined that interstate commerce was involved.

That case is analogous to this only in that they both involved attorneys. The *Goldfarb* case was a class action and the allegations and findings were that not just one client was affected, but all persons requiring a title search; in fact, the very purpose of the fee schedule was to fix the price of legal services so that all members of the public who utilized this type of legal service would have to pay the same minimum fee. Thus the public interest was shown to be affected.

The court implicitly recognized the lack of precedent for the concept that the legal profession is involved in trade and commerce, since it cited none. It also issued the following caveat by way of footnote:

> The fact that a restraint operates upon a profession as distinguished from a business is, of course, relevant in determining whether that particular restraint violates the Sherman Act. It would be unrealistic to view the practice of professions as interchangeable with other business activities, and automatically to apply to the professions antitrust concepts which originated in other areas. The public service aspect, and other features of the professions, may require that a particular practice, which could properly be viewed as a violation of the Sherman Act in another context, be treated differently. We intimate no view on any other situation than the one with which we are confronted today.

*Goldfarb v. Virginia State Bar, supra* at 787 n.17.

Since the appellant has not shown that an attorney's breach of contract causing damage to no one but his client has a sufficient impact upon the public to qualify it as one of those acts or practices which are prohibited under RCW

19.86; we conclude that the trial court correctly dismissed the action.

The judgment is affirmed.

FINLEY, HUNTER, HAMILTON, WRIGHT, UTTER, BRACHTEN-BACH, and HOROWITZ, JJ., and RYAN, J. Pro Tem., concur.