[No. 45783. En Banc. July 24, 1980.]

PATRICIA ANHOLD, *Appellant,* v. SCOTT DANIELS,
ET AL, *Respondents.*

*Seth Armstrong,* for appellant.

*Evans, Quimby & Hall, Inc., P.S.,* by *Janet E. Quimby,* for respondents.

*Slade Gorton, Attorney General, John E. Lamp, Senior Assistant,* and *David A. Saraceno, Assistant,* amici curiae.

HICKS, J.—Here, we decide if the facts presented support a private action under RCW 19.86, the Consumer Protection Act. At the close of plaintiff's case, the trial court dismissed her consumer protection action stating that "[n]either the evidence presented nor reasonable inference therefrom establishes a prima facie case of unfair or deceptive acts or practices within the meaning of RCW 19.86-.020." We remand for further consideration.

Plaintiff/appellant Patricia Anhold, an unemployed single woman inexperienced in business, was approached by respondent Daniels at a social gathering. Daniels presented her, as he did others at the function, with his business card. This card identified him as specializing in "Business Opportunities". At that time, he discussed restaurants as business opportunities with Anhold.

Within a week, Daniels called upon Anhold at her residence soliciting her investment in a restaurant venture. Ultimately, following representations by respondents Daniels and Munger, Anhold was persuaded to invest $3,000 in this venture. The money went into the bank account of the Hungry "U" corporation.

To obtain the money to invest, Anhold borrowed from Seattle–First National Bank, University Branch. Munger cosigned her note. The trial court found that Daniels and Munger, as an inducement for her to take out the loan and invest, offered Anhold an opportunity to become a partner in a joint venture that involved opening and operating a restaurant. There was testimony in the record from which it could be found that a number of other representations

were made by Daniels or Munger to persuade Anhold to invest money. It could also have been found that these further representations were false.

Daniels and the Hungry "U" corporation were the principals in the joint venture in which Anhold was persuaded to invest. Munger was president of Hungry "U", Inc., which operated the Hungry "U" restaurant. The trial court found Munger "had been in the restaurant business for more than a year and was variously experienced in corporate activity and purchase of business assets."

As the trial court phrased it, the agreement between Daniels and the Hungry "U" corporation "limited the ability to make [Anhold] a partner, but [Anhold] was not aware of this limitation." Both Daniels and Munger knew of the restrictions in the joint venture agreement at the time they represented to Anhold that she would be made a partner. That asseveration was never fulfilled nor did Anhold ever receive any return on her investment as the venture failed after about a year of operation.

Anhold sued Daniels, Munger, the Hungry "U" corporation, and Seattle–First National Bank, University Branch. Her action alleged a violation of RCW 19.86 and sought, *inter alia,* restitution, damages, injunctive relief and a reasonable attorney's fee.

As noted above, plaintiff's action under RCW 19.86 was dismissed at the end of her case in chief. At the trial's conclusion, the court gave judgment to Anhold against Munger and Hungry "U", Inc., jointly and severally, for money had and received in the amount of $809.90 plus interest from December 9, 1975, and taxable costs. The record before us does not disclose the trial court's disposition as to the other named defendants. We retained Anhold's direct appeal from the dismissal of her action under RCW 19.86.

In 1970, the legislature amended the Consumer Protection Act authorizing private parties to sue for unfair or deceptive business practices. At the times pertinent to this action, RCW 19.86.090 read in part:

Any person who is injured in his business or property by a violation of RCW 19.86.020 . . . may bring a civil action in the superior court . . .

 Construing this section in *Lightfoot v. MacDonald*, 86 Wn.2d 331, 334, 544 P.2d 88 (1976), we stated:

Since the purpose of the act is to protect the public interest, it is natural to assume that the legislature, in granting a private remedy in RCW 19.86.090, intended to further implement the protection of that interest. It follows that *an act or practice of which a private individual may complain must be one which also would be vulnerable to a complaint by the Attorney General* under the act.

(Italics ours.) Further, in *Lightfoot,* at page 333, we rejected the notion that the Consumer Protection Act provided an additional remedy for private wrongs which do not affect the public generally.

Since *Lightfoot,* we have held the Consumer Protection Act applies and a private party may bring an action under it where there is a specific legislative declaration that the public has an interest in the subject matter of the action. *Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 581 P.2d 1349 (1978) (insurance). The other side of that coin has also been determined; *i.e.,* the act is not applicable and will not support a private action where there is a specific legislative declaration that the public does not have an interest in a particular subject matter. *Brown v. Charlton,* 90 Wn.2d 362, 583 P.2d 1188 (1978) (small scale water provider).

Between the extremes of *Salois* and *Brown* are the myriad sets of facts upon which there is no direct legislative declaration. This is such a case. Here, we must determine if the remedies of the Consumer Protection Act are available to plaintiff as a private citizen. The "Attorney General" test for sufficiency of public interest appears to have been little utilized or understood and apparently has yielded conflicting results. *See Testo v. Russ Dunmire Oldsmobile, Inc.,* 16 Wn. App. 39, 554 P.2d 349, 83 A.L.R.3d 680 (1976);

*cf. Lookebill v. Mom's Mobile Homes, Inc.,* 16 Wn. App. 817, 559 P.2d 600 (1977).

RCW 19.86.020 provides:

> Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

RCW 19.86.090 provides in part:

> Any person who is injured in his business or property by a violation of RCW 19.86.020 . . . may bring a civil action in the superior court to enjoin further violations, to recover the actual damages sustained by him, or both, together with the costs of the suit, including a reasonable attorney's fee, and the court may in its discretion, increase the award of damages to an amount not to exceed three times the actual damages sustained: *Provided,* That such increased damage award for violation of RCW 19.86.020 may not exceed one thousand dollars.

As will be observed, the above sections do not require a private party to demonstrate that the public interest be affected as a condition to bringing an action under the act. Nor is there any such provision elsewhere in the statute. On its face, the act demands no more than that a litigant sustain injury as a result of unfair or deceptive acts or practices in the conduct of any trade or commerce. Nonetheless, in *Lightfoot v. MacDonald, supra,* this court established a public interest requirement as a prerequisite to bringing a private action.

The public interest test stated in *Lightfoot* of "vulnerable to a complaint by the Attorney General", however, may not be as restrictive as it might appear at first reading. RCW 19.86.080 in pertinent part states:

> The attorney general may bring an action in the name of the state against any person to restrain and prevent the doing of any act herein prohibited or declared to be unlawful; . . .

No other standard for bringing an action in the name of the State is contained in the act. Thus, it appears to be solely within the discretion of the Attorney General whether an action is brought under RCW 19.86.

Consequently, the test for a private action under *Lightfoot* is: (1) Has an act or practice prohibited by RCW 19.86.020 been committed? and (2) Would the Attorney General, in his discretion, believe it to be in the public interest to prosecute that particular action? Neither the legislature nor this court, in *Lightfoot* or elsewhere, has otherwise formulated criteria for determining when a private suit may be brought under the act. *See* Comment, *Private Suits Under Washington's Consumer Protection Act: The Public Interest Requirement,* 54 Wash. L. Rev. 795 (1979).

The legislature in amending the Consumer Protection Act in 1970 to grant a private remedy (Laws of 1970, 1st Ex. Sess., ch. 26, § 2, p. 203) may be understood as attempting to ensure that the act become more effective in the marketplace. Obviously, the Attorney General has time and staff only for the larger and more egregious case. The legislature in authorizing actions by private parties under RCW 19.86.090, as a practical matter, simply has given a wider scope to the act.

The Attorney General is apparently of this mind. His office appeared as amicus curiae in this action, as it has in others, and argued that the conduct in this case is actionable under RCW 19.86.090. Apparently, in his view, the facts in this matter were "vulnerable to a complaint by the Attorney General."

We reiterate that in order for a private individual to bring an action under RCW 19.86, the conduct complained of must: (1) be unfair or deceptive; (2) be within the sphere of trade or commerce; and (3) impact the public interest. The language "vulnerable to a complaint by the Attorney General", however, is either too restrictive or too all-inclusive. It is too restrictive if it confines private actions to the large and egregious case with which the Attorney General has in the past concerned himself. It is too all-inclusive if its sweep encompasses so many cases that the act becomes another remedy for virtually all private wrongs. As noted above, *Lightfoot* rejected such a

result. We believe the presence of public interest is demonstrated when the proof establishes that (1) the defendant by unfair or deceptive acts or practices in the conduct of trade or commerce has induced the plaintiff to act or refrain from acting; (2) the plaintiff suffers damage brought about by such action or failure to act; and (3) the defendant's deceptive acts or practices have the potential for repetition.

Here, the trial court made its findings of fact Nos. 4 and 5 as follows:

> As an inducement Daniels and Munger offered Plaintiff an opportunity to become a partner in the joint venture. The joint venture agreement limited the ability to make Plaintiff a partner, but Plaintiff was not aware of this limitation.

> On or about December 9, 1975, Plaintiff Anhold was induced by representations of Scott Daniels and William Munger to invest $3,000 for the down payment on the restaurant. Plaintiff had no previous business experience. Plaintiff's funds were the proceeds of a loan which Defendant Munger personally cosigned. Plaintiff Anhold reduced the loan with $1,000 of her personal funds.

A representation that one may become a partner in an enterprise made to induce investment, knowingly false when made, is an unfair and deceptive act. Evidence was offered at trial by Anhold which, if believed, established that Daniels and Munger, using the same ploy as in the instant case, had previously obtained $4,000 from Jo Herold, a widow of no business experience. The trial court made no finding regarding this evidence. Nor did the trial court formally evaluate Anhold's testimony that representations were made that: her investment was safe because it would be secured by the equipment of the restaurant to be acquired, the Hungry "U" restaurant would subsidize the operating expenses of the new venture for a period of time more than sufficient for her investment to be repaid, and high profits were assured. These representations may all have been instrumental in inducing Anhold to invest.

Clearly, the representations found by the trial court to have been made by Daniels and Munger, and others testified to by Anhold if made, are deceptive and unfair within the meaning of RCW 19.86.020. We hold the solicitation of Anhold to invest in the joint venture put the representations made to her by Daniels and Munger within the sphere of trade or commerce.

Finally, the potential for repetition of the unfair and deceptive acts is apparent. If Munger or Daniels solicited Jo Herold to invest in the restaurant venture, the requisite effect on the public interest exists to permit an action under RCW 19.86 if the court can find: (1) both Anhold and Herold were solicited by Daniels or Munger to invest in the joint venture; (2) the same or similar unfair and deceptive representations were made to each to induce investment; (3) both women did invest as a result of the representations; and (4) Anhold suffered damage.

The case is remanded for further consideration in the light of this opinion.

UTTER, C.J., and STAFFORD, WRIGHT, HOROWITZ, and WILLIAMS, JJ., concur.

ROSELLINI, J. (concurring in the result)—I agree that the evidence reveals a case of unfair acts in commerce, giving that concept the liberal interpretation which the statute decrees. The defendant solicited investments in a business venture, and found two investors. The evidence indicates that if he had not succeeded in persuading the plaintiff to supply the needed money, he would have approached others.

Direct solicitation was absent in *Lightfoot v. MacDonald*, 86 Wn.2d 331, 544 P.2d 88 (1976).[1] This is a sufficient factor upon which to distinguish that case. Whether the lawyer who was sued in that action was engaged in "trade or

---

[1] A comment appearing in 54 Wash. L. Rev. 795 (1979) analyzes the statute and concludes that this court correctly read the statutes to require a showing that the public interest is involved.

commerce" was a question which we left unanswered. At that time, attorneys were not permitted to solicit clients or advertise. We assumed, for purposes of deciding the applicability of the Consumer Protection Act, that the lawyer had engaged in some deception or unfairness, although there was little in the record to indicate that this was the case.

I adhere to the view expressed unanimously by this court in *Lightfoot* that the act or practice must be one which the Attorney General could attack. This is only another way of saying that the public interest must be involved, for, as we remarked there, the Attorney General is not empowered to bring actions on behalf of private individuals. For this reason, I find incomprehensible the statement in the majority opinion to the effect that if a private individual may sue for any act or practice which the Attorney General might attack, "the act becomes another remedy for virtually all private wrongs." Exactly the opposite is the case: If private remedies under the act are not restricted to those which arise out of transactions which the Attorney General might sue to restrain (those affecting the public interest), the act does indeed become another remedy for purely private wrongs and an authorization of punitive damages for such wrongs.

Some critics of the "private attorney general" theory expressed in *Lightfoot* and in *Seaboard Sur. Co. v. Ralph Williams' Northwest Chrysler Plymouth, Inc.*, 81 Wn.2d 740, 504 P.2d 1139 (1973), have feared that it places upon the plaintiff the burden of showing that the unfair act or practice complained of is a part of a pattern. But cases decided in this jurisdiction have made it plain that a finding of public interest can be based upon evidence that the defendant is engaged in a trade or in commerce in which the legislature has declared a public interest to exist or which involves solicitation of patronage or investment, that the transaction was solicited, and that the act or practice was not an isolated occurrence but likely to have been repeated. *Salois v. Mutual of Omaha Ins. Co.*, 90 Wn.2d

355, 581 P.2d 1349 (1978); *Testo v. Russ Dunmire Oldsmobile, Inc.,* 16 Wn. App. 39, 554 P.2d 349, 83 A.L.R.3d 680 (1976); *cf. Lookebill v. Mom's Mobile Homes, Inc.,* 16 Wn. App. 817, 559 P.2d 600 (1977).

In *Lightfoot,* we took account of that provision of the Consumer Protection Act which directs the state courts to be guided by the interpretation given by the federal courts to the various federal statutes dealing with, the same or similar matters, and which declares that the act was not intended to prohibit acts or practices which are not injurious to the public interest. If that last provision means only that the act is not intended to prohibit beneficial acts, it was unnecessary. It appears more reasonable to view this as an expression of the legislature's concern with the public interest, rather than with purely private wrongs. The United States Supreme Court in *Federal Trade Comm'n v. Klesner,* 280 U.S. 19, 74 L. Ed. 138, 50 S. Ct. 1, 68 A.L.R. 838 (1929), interpreting the federal act prohibiting unfair and deceptive acts or practices in commerce, declared that to justify a complaint before the commission, the public interest must be specific and substantial.

I doubt very much that the actions complained of here would meet that test, but am willing to give our statute a broader interpretation because it affords a private right of action where the federal statute does not, and because it directs its terms to be liberally construed. Nevertheless, I think the court should not lose sight of the legislature's evident intent, which was to protect the public against consumer fraud and the results of unfair competition, for which private remedies are generally nonexistent or inadequate.

Here, while the defendant was not in the business of soliciting investments, he held himself out as a professional business consultant and in fact had successfully solicited at least one other person. The plaintiff was a stranger to him when he approached her. It can be inferred that he would have solicited others had he not been successful in obtaining the needed money from the plaintiff. Although the

question is not free from doubt, I will agree that there was a sufficient showing of a pattern of solicitation to have justified the Attorney General in seeking, on behalf of the public, to restrain the defendant's acts under RCW 19.86-.020, had they been brought to his attention.

While the present case is one of borderline eligibility, I believe it can be sustained without extending the act's coverage to categories not intended to be protected. I see no necessity of abandoning the public interest criteria in order to accomplish what the court conceives to be a desirable result.

DOLLIVER, J. (concurring in the result)—I concur with the result. However, I believe the court should abandon the unneeded and needlessly complex rationale of *Lightfoot v. MacDonald,* 86 Wn.2d 331, 544 P.2d 88 (1976). *See Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 581 P.2d 1349 (1978); *Testo v. Russ Dunmire Oldsmobile, Inc.,* 16 Wn. App. 39, 554 P.2d 349, 83 A.L.R.3d 680 (1976); *Lookebill v. Mom's Mobile Homes, Inc.,* 16 Wn. App. 817, 559 P.2d 600 (1977); Comment, *Private Suits Under Washington's Consumer Protection Act: The Public Interest Requirement,* 54 Wash. L. Rev. 795 (1979). The statute is direct and should not be difficult to apply. I agree with the majority that "[o]n its face, the act demands no more than that a litigant sustain injury as a result of unfair or deceptive acts or practices in the conduct of any trade or commerce." If this language lies harshly on those who are in violation, relief should be sought in the legislature, not here.

BRACHTENBACH, J., concurs with DOLLIVER, J.