[No. 10022–0–I.   Division One.   February 16, 1982.]

STEVEN A. KEYES, *Respondent,* v. ROBERT E. BOLLINGER, JR., ET AL, *Appellants.*

*Bruce E. Jones* and *Sellers & Jones,* for appellants.

*Michael S. Gillie* and *Yothers & Kostakos,* for respondent.

JAMES, J.—Plaintiff Steven A. Keyes appeals the entry of judgment in favor of defendant Robert E. Bollinger as to that portion of Keyes' action which alleged a violation of the Consumer Protection Act. Bollinger appeals and assigns error to the entry of certain "contingent" findings of fact and conclusions of law. These appeals follow our remand in *Keyes v. Bollinger,* 27 Wn. App. 755, 621 P.2d 168 (1980). The essential facts are stated therein.

On remand, the trial judge carefully reviewed the inconsistency which we found to exist between the findings of fact and his conclusion that the Consumer Protection Act did not apply. The trial judge entered additional findings of fact including the following:

> That while it is true that delays in estimating the completion or the repair of Plaintiff's and the other houses . . . could conceivably be interpreted as an unfair or deceptive practice, the Court does not find it to be so by the Defendant in this case because of the numerous circumstances over which the Defendant had no control which caused delays in completion or repairs, such as: Bad weather conditions, delay by subcontractors, power, water and sewer utility problems, easements and legal problems related to set backs, etc., equipment malfunctions, insurance claims, financing delays, negotiations with owners, plan changes by owners, injuries to co-workers or partner, and unavailable materials.

Finding of fact No. 26A, in part. The trial judge concluded:

> Due to the multiplicity of causes of delays in completion or in making repairs over which the Defendant had no control, in addition to his failure to meet estimates for which the Defendant had no explanation, the Court does

not find that Defendant's estimates as to when completion would be accomplished or repairs would be made were deceptive or unfair.

Finding of fact No. 26A. The trial judge, however, also made appropriate "contingent" findings of fact as to Keyes' damages for alleged violations of the Consumer Protection Act, which he would enter if the Court of Appeals were to conclude the Consumer Protection Act had been violated.

Preliminarily, Bollinger contends the trial judge's "finding" that the facts do not give rise to a Consumer Protection Act claim is reviewable only under the substantial evidence test of *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). We do not agree.

A finding that a defendant in a Consumer Protection Act case did or did not engage in certain conduct is reviewable under the substantial evidence test. *Grayson v. Nordic Constr. Co.*, 92 Wn.2d 548, 599 P.2d 1271 (1979). But, as stated in *Fisher v. World–Wide Trophy Outfitters*, 15 Wn. App. 742, 743–44, 551 P.2d 1398 (1976), "[t]he determination of whether a particular statute applies to a factual situation is a conclusion of law, and not a finding of fact." Consequently, the question of whether particular actions gave rise to a violation of the Consumer Protection Act is reviewable as a question of law. *Fisher v. World–Wide Trophy Outfitters, supra. See Lightfoot v. MacDonald*, 86 Wn.2d 331, 337, 544 P.2d 88 (1976).

The Consumer Protection Act declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce". RCW 19.86.020. The act's prohibitions are, however, limited to those practices which are "injurious to the public interest," RCW 19.86.920. A Consumer Protection Act claim may be based on a per se violation of a statute or on unfair or deceptive practices unregulated by statute but involving the public interest. *Anhold v. Daniels*, 94 Wn.2d 40, 614 P.2d 184 (1980); *Lidstrand v. Silvercrest Indus.*, 28 Wn. App. 359, 623 P.2d 710 (1981).

Plaintiffs claiming a per se violation of the Con-

sumer Protection Act must show

> (1) the existence of a pertinent statute; (2) its violation; (3) that such violation was the proximate cause of damages sustained; and (4) that they were within the class of people the statute sought to protect.

*Dempsey v. Joe Pignataro Chevrolet, Inc.,* 22 Wn. App. 384, 393, 589 P.2d 1265 (1979). Keyes contends Bollinger's failure to obtain a final inspection and approval as required by Seattle ordinance constitutes a per se violation of the act. The trial judge concluded that the failure to obtain a final inspection is not material to the case. We agree.

Keyes' theory is that the absence of such an inspection (and concomitant approval by the City) is indicative of code violations impairing the "structural integrity" of his house. We discern this theory to be an attempt to claim specific building code violations without proving the existence of a pertinent code provision, as required by *Dempsey.* We also observe that Keyes has not proven any compensable damage proximately caused by Bollinger's failure to obtain an inspection, independent of the asserted building code violations.

■ For Consumer Protection Act claims not premised upon a specific statutory violation, the requisite

> presence of public interest is demonstrated when . . . (1) the defendant by unfair or deceptive acts or practices in the conduct of trade or commerce has induced the plaintiff to act or refrain from acting; (2) the plaintiff suffers damage brought about by such action or failure to act; and (3) the defendant's deceptive acts or practices have the potential for repetition.

*Anhold v. Daniels, supra* at 46. Keyes contends Bollinger violated the Consumer Protection Act by making numerous representations as to completion and repair dates which he did not meet.

The trial judge found that Bollinger "made a number of estimates as to when the house would be completed and the house was not ready when estimated." Finding of fact No. 8. Bollinger first gave Keyes an estimated completion date

of late March to early April when Keyes purchased the house; Keyes moved in on July 25. The trial judge found that Bollinger "made repeated estimates as to when the repairs would be made" and that "the repairs were not made in a prompt and timely manner and as a result some of the defects became worse." Findings of fact Nos. 12, 13. The trial judge further found that Bollinger "made repeated estimates as to when the [houses of other buyers] would be ready, and that the houses were not ready when estimated for [the buyers]." Finding of fact No. 23. Bollinger also "made repeated estimates as to when the defects [in the other buyers' homes] would be fixed but usually the defects would not be fixed when estimated." Finding of fact No. 24. Bollinger's failures to comply with these representations or "estimates" were neither isolated occurrences nor de minimis in degree. Indeed, the sheer number of unmet representations of completion and repair indicates Bollinger made his "estimates" without discernible likelihood he could or would provide the promised performance.

Bollinger's primary contention is that his "estimates" as to completion and repair dates could not be "unfair or deceptive" in view of the many circumstances which the trial judge found to have influenced the delays in completion and repair. We conclude that such representations or "estimates" do constitute "unfair or deceptive practices" under these circumstances.

A contractor does not provide "estimates" or representations as to completion or repair dates merely to be helpful to the purchaser, but to influence the purchaser to buy the contractor's product or to rely upon the contractor's services to remedy defects in the product. The purchaser will likely rely upon such "estimates." The overly casual or unfounded "estimate" thus entails a foreseeable risk of injury to the purchaser.

██ Full compliance with such representations or "estimates" may be prevented by many circumstances, such as those found by the trial judge to exist here. But to the extent these circumstances negate a conclusion that Bollin-

ger acted with intent or design to engage in unfair or deceptive conduct, they are irrelevant. Proof of a defendant's intent or design to engage in unfair or deceptive practices is not required; the acts or practices need have only a tendency or capacity to deceive a substantial portion of the purchasing public. *Keyes v. Bollinger, supra; Tallmadge v. Aurora Chrysler Plymouth, Inc.,* 25 Wn. App. 90, 605 P.2d 1275 (1979); *Testo v. Russ Dunmire Oldsmobile, Inc.,* 16 Wn. App. 39, 554 P.2d 349, 83 A.L.R.3d 680 (1976); *Fisher v. World–Wide Trophy Outfitters, supra.* To the extent reasonably foreseeable circumstances, such as "typical wet working weather" and the contractor's other commitments, may affect a contractor's ability to honor his representations, they are matters far more within the contractor's knowledge and experience than within the purchaser's knowledge and experience. If such "estimates" as made possess a tendency or capacity to deceive, albeit for reasons not directly controlled by a defendant, it serves the protective purposes of the Consumer Protection Act to impose liability. *See Fisher v. World–Wide Trophy Outfitters,* 15 Wn. App. 742, 551 P.2d 1398 (1976) (representations that hunters were assured of chances to shoot specific animals on a big game hunt).

We hold that a contractor engages in an "unfair or deceptive" act by "estimating" or representing probable completion or repair dates to purchasers, with which "estimates" he is unable to substantially comply due to reasons which should be reasonably foreseeable in light of the contractor's knowledge and experience.[1] We further hold that where the evidence shows the contractor engages in such acts as a matter of business practice, he engages in "unfair or deceptive acts or practices in the conduct of any trade or commerce", RCW 19.86.020, and that such conduct affects

---

[1] De minimis delay from promised or "estimated" performance is beyond the scope of this opinion. Bollinger's extended, often month–after–month, delays in building and repairing defects in Keyes' home and those of other buyers are beyond any definition of reasonable or substantial compliance with such "estimates."

the public interest. RCW 19.86.920. Here, the evidence establishes that Bollinger violated the Consumer Protection Act under the test set forth in *Anhold v. Daniels, supra.*

In *Keyes v. Bollinger, supra,* we affirmed the trial judge's conclusion that Keyes waived his breach of contract claim for construction delays. Bollinger contends that, therefore, Keyes' Consumer Protection Act recovery must be limited to damages for repairing construction defects because Keyes waived any Consumer Protection Act claim for construction delays. We do not agree.

■ The Consumer Protection Act affords a right to recover damages independent of underlying contract rights:

> "[U]nfair or deceptive acts or practices," [under RCW 19.86.020] is a new concept and has no common–law equivalent. Thus, until the 1970 amendment [to the act], there was no statutory or common–law private right of action based upon such acts or practices. . . .
>
> . . .
>
> . . . RCW 19.86.090 authorizes an award of treble damages. Not only does it create a new cause of action but it also imposes a penalty.

*Johnston v. Beneficial Management Corp. of Am.,* 85 Wn.2d 637, 640, 538 P.2d 510 (1975). *Accord, Aungst v. Roberts Constr. Co.,* 95 Wn.2d 439, 625 P.2d 167 (1981); *Wineland v. Marketex Int'l, Inc.,* 28 Wn. App. 830, 627 P.2d 967 (1981). Thus, Keyes' waiver of his rights under his contract is not determinative of whether he waived his rights under the Consumer Protection Act.

■ "'Waiver' is an intentional relinquishment of a known right, but the existence of an intent to waive that right must clearly appear in order to show a waiver." *State ex rel. Madden v. PUD 1,* 83 Wn.2d 219, 222, 517 P.2d 585 (1973), *appeal dismissed, cert. denied, PUD 1 v. Madden,* 419 U.S. 808, 42 L. Ed. 2d 33, 95 S. Ct. 20 (1974). Although waiver may be established by proof of an express agreement or implied from the circumstances, the party who asserts the existence of a waiver has the burden of proving it. *Rhodes v. Gould,* 19 Wn. App. 437, 576 P.2d 914 (1978). If the right claimed to have been knowingly waived requires

an appraisal of the legal significance of particular conduct or documents, the lack of counsel at the time of an alleged waiver (as in Keyes' case) is a factor to be considered in determining if he had knowledge of the right he allegedly waived. *See Ross v. Harding,* 64 Wn.2d 231, 391 P.2d 526 (1964).

Further, the Consumer Protection Act is to "be liberally construed that its beneficial purposes may be served", RCW 19.86.920. A conclusion that a party waived his rights under the act merely by closing a housing transaction characterized by the contractor's unfair or deceptive acts or practices does not serve the act's "beneficial purposes". Persons injured by Consumer Protection Act violations are afforded 4 years after accrual of their cause of actions to sue for damages. RCW 19.86.120. A precipitous or questionable finding of waiver impinges upon this allowance.

Here, the sole basis upon which it is asserted that Keyes waived any rights under the Consumer Protection Act is his agreeing to close the transaction 3 to 4 months after completion was promised. A conclusion that Keyes intentionally relinquished a known right under these circumstances is not supported by the evidence.

The trial judge entered "contingent" findings as to Keyes' damages, which we find to be supported by substantial evidence. Keyes additionally contends that the damages awarded for construction defects are within the ambit of the Consumer Protection Act. We agree.

Bollinger represented that construction defects *would be repaired* in accordance with his "estimates." The defective conditions for which Keyes recovered damages were never repaired. The evidence establishes at least a potential for repetition, if not actual repetition, of such failure to make repairs. Consequently, the Consumer Protection Act damages include the cost of repairing defects which Bollinger did not repair as well as damages occasioned by the delays in making repairs.

The "contingent" findings support an award of damages for "mental distress, embarrassment, and inconvenience" to

Keyes because of the construction and repair delays. Bollinger contends such damages are not recoverable under the Consumer Protection Act. As a general rule, we would agree.

As Keyes points out, the term "actual damages" includes damages for mental distress, embarrassment, and inconvenience, as employed in the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681n, 1681o; *Rasor v. Retail Credit Co.*, 87 Wn.2d 516, 554 P.2d 1041 (1976), and in Washington's Law Against Discrimination, RCW 49.60-.030(2); *Ellingson v. Spokane Mortgage Co.*, 19 Wn. App. 48, 573 P.2d 389 (1978). Our review of the statutory language persuades us, however, that a less restricted analysis is necessary.

RCW 19.86.090 provides:

> Any person who is *injured in his business or property* by a violation of RCW 19.86.020, 19.86.030, 19.86.040, 19.86.050, or 19.86.060 . . . may bring a civil action in the superior court . . . to recover the actual damages sustained by him, . . .

(Italics ours.) The italicized language is not found in the damages provisions of either the Fair Credit Reporting Act or Washington's Law Against Discrimination.

Thus, a plaintiff must suffer injury to his "business or property" in order to recover under the Consumer Protection Act. If he suffers injury other than to his "business or property", the injury is not compensable under the act. The requirement of injury to "business or property" reflects RCW 19.86.090's provision of a remedy for a wide range of anticompetitive and monopolistic practices, RCW 19.86-.020, 19.86.030, 19.86.040, 19.86.050, 19.86.060, as well as those "unfair or deceptive acts or practices", RCW 19.86-.020, more likely to directly affect the consumer.

Identical language is found in the Clayton Act, 15 U.S.C. § 15: "Any person who shall be *injured in his business or property* by reason of anything forbidden in the antitrust laws may sue therefor in any district court . . ." (Italics ours.) Our legislature has directed that

> [i]t is the intent of the legislature that, in construing this act, the courts be guided by the interpretation given by the federal courts to the various federal statutes dealing with the same or similar matters . . .

RCW 19.86.920.

In *Loew's, Inc. v. Cinema Amusements, Inc.*, 210 F.2d 86, 95 (10th Cir.), *cert. denied,* 347 U.S. 976, 98 L. Ed. 1115, 74 S. Ct. 787 (1954), it is held that

> [t]he measure of damages to which plaintiff is entitled in a case [arising under 15 U.S.C. § 15] is the pecuniary loss to its business or property resulting proximately from the combination or conspiracy of the defendants.

In *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 31 L. Ed. 2d 184, 92 S. Ct. 885 (1972), the Supreme Court held that injury to business or property under 15 U.S.C. section 15 referred only to damage to the plaintiff's commercial or economic interests. The scope of injury to "property" is, however, quite broad and is not restricted to commercial or business injury. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 60 L. Ed. 2d 931, 99 S. Ct. 2326 (1979). "A consumer whose money has been diminished by reason of an antitrust violation has been injured 'in his . . . property' within the meaning of [15 U.S.C. § 15]." *Reiter v. Sonotone Corp., supra* at 339. *Accord, Chattanooga Foundry & Pipe Works v. Atlanta*, 203 U.S. 390, 51 L. Ed. 241, 27 S. Ct. 65 (1906). *See generally* L. Sullivan, *Antitrust* § 247 (1977).

The breadth of injury to one's "business or property" compensable under the Consumer Protection Act is demonstrated by the many appellate court decisions construing the act. But the reasoning of the federal decisions and the language of RCW 19.86.090 persuade us that "mental distress, embarrassment, and inconvenience," without more, are not compensable under the Consumer Protection Act. Should "mental distress, embarrassment, and inconvenience" in fact entail pecuniary loss, we discern no reason under the act to exclude such damages. Thus, we find no inconsistency between this opinion and the language in *Tallmadge v. Aurora Chrysler Plymouth, Inc.*, 25 Wn. App.

90, 605 P.2d 1275 (1979), wherein we stated that inconvenience may be compensable under the Consumer Protection Act.[2] Applying these principles to the "contingent" findings here, we conclude that judgment under the Consumer Protection Act may be entered for all damages supported by the "contingent" findings except for damages due to "mental distress, embarrassment, and inconvenience."

The trial judge also made a "contingent" finding as to a reasonable trial attorney's fee to be awarded Keyes pursuant to the act. Bollinger first contends the amount awarded is erroneous because there is no segregation of the fee between Keyes' Consumer Protection Act claim and Keyes' claim for damages for defective construction. Bollinger secondly contends the amount awarded is unreasonable because the fee exceeds the amount of Keyes' recovery. We do not agree with either contention.

■ As heretofore stated, the damages awarded because of construction defects which Bollinger promised to repair, but did not, are within the scope of the Consumer Protection Act. Consequently, we need not consider the circumstances under which such segregation may be required. Secondly, an award is not unreasonable merely because it exceeds the damages awarded under the Consumer Protection Act. *Connelly v. Puget Sound Collections, Inc.,* 16 Wn. App. 62, 553 P.2d 1354 (1976).

Bollinger finally contends that the provisions of a "contingent" injunction, to be issued if we found the Consumer Protection Act applicable, are erroneous because they prohibit practices which were not specifically found to violate the act. The "contingent" nature of this remedy demonstrates, however, that the trial judge would enjoin only such acts or practices as this court found to violate the act. Keyes offers no argument in support of its terms. Under

---

[2]Although the treble damage provision of RCW 19.86.090 is designed to punish the defendant and deter further violations, we note that payment of such damages to the plaintiff, who is almost invariably inconvenienced and often subject to a degree of mental distress, indirectly provides some remedy for such injuries.

these circumstances, we consider extended discussion to be inappropriate.

RCW 19.86.090 authorizes "a civil action in the superior court to enjoin further violations" of the Consumer Protection Act. Consequently, such injunctions are applicable to the violations which the court concludes occurred. Suits for injunctive relief are equitable in nature; hence, the trial judge possesses substantial discretion in determining the scope and terms of the injunction. *Tradewell Stores, Inc. v. T.B. & M., Inc.,* 7 Wn. App. 424, 500 P.2d 1290 (1972). The injunction must, however, grant effective relief. *Wine v. Theodoratus,* 19 Wn. App. 700, 577 P.2d 612 (1978). We discern no reason for interfering with the trial judge's discretion in determining the precise terms of injunctive relief necessary to enjoin further occurrences of those violations identified in this opinion.

We reverse and remand to the trial judge for entry of a judgment consistent with the "contingent" findings, excepting only damages for "mental distress, embarrassment, and inconvenience," plus a reasonable trial attorney's fee, and for such injunctive relief as is consistent with this opinion. We award Keyes an attorney's fee of $3,000 for this appeal. *See Connelly v. Puget Sound Collections, Inc., supra.*

SWANSON and WILLIAMS, JJ., concur.